## Frank Moninger, Intervening Petitioner, v. Security Title and Trust Co.

1. EQUITY JURISDICTION—*Where Trust Funds May be Pursued.*—
The rule in Illinois is that trust funds may only be pursued when they
can be clearly distinguished from other property held by the trustee, or
those representing him.

2. SAME—*When Beneficial Owner Must Resort to Personal Liability
of Trustee.*—If the trust property has been transferred to a *bona fide*
purchaser for value without notice, or has lost its identity, the beneficial
owner must, and under other circumstances may, resort to the personal
liability of the wrong-doing trustee.

3. SAME—*Where Beneficial Owner Occupies the Position of a General
Creditor.*—Where a trustee has converted a trust fund into money, and
mingled it with his other moneys, so that it can not be separated from
the latter, the beneficial owner occupies the position of a general creditor
of the estate, and can not follow the fund into the hands of an assignee
for the benefit of creditors.

**Intervening Petition.**—Appeal from the Superior Court of Cook
County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in
the Branch Appellate Court at the October term, 1899. Reversed and
remanded. Opinion filed July 10, 1900.

J. S. HUEY, attorney for appellant.

LACKNER, BUTZ & MILLER, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The appellee is receiver of the banking firm of E. S.
Dreyer & Co. Appellant filed his intervening petition in
the suit wherein appellee was appointed receiver, claiming
to be entitled to a preference and priority of payment over
the general creditors of Dreyer & Co., to the extent of a
certain demand, concerning which the facts are substantially
as follows:

Appellant was the owner and holder of a certain princi-
pal note for $2,500 made by a third party and secured by
trust deed. The note and trust deed were purchased by
appellant from Dreyer & Co., some four years before the

transaction complained of, and the indebtedness was payable at their office.

On December 10, 1896, appellant was notified by Dreyer & Co. that one Ritchie, who had bought the premises covered by the trust deed, desired to pay the note and unpaid interest, and to bring the papers to their office for collection. Accordingly, appellant delivered the papers to Dreyer & Co. two days afterward, and took their receipt for the same, for collection.

It appears that on the day (December 10th) that Dreyer & Co. notified appellant to bring in the papers, Ritchie gave to them his bank check for the principal sum of the note, and on December 18, 1896, paid to them the small amount of accrued and unpaid interest thereon, on which last named day Dreyer & Co. surrendered the papers to him canceled.

The check for the principal sum was deposited by Dreyer & Co. to the credit of their general deposit account in the National Bank of Illinois, on or about the day Ritchie gave it to them and it was duly paid. At the time Dreyer & Co. notified appellant to bring in the papers, they said nothing about having already received the money for the note, and appellant had no knowledge or notice at the time he left the papers with Dreyer & Co., that they had then received said principal sum or any part thereof, and did not know of it until after Dreyer & Co. failed in business and the receiver had been appointed, on or about December 21, 1896.

Appellant had no account of any kind with Dreyer & Co., and the only entry of the transaction that appears on the books of Dreyer & Co. is in their cash book, wherein an item is shown under the head of loan accounts, as follows: " W. J. McGarigle by Ritchie, loan, paid, $2,500." And it is explained that " McGarigle " means the maker of the note held by appellant, and " Ritchie " the payer of it.

There seems to have been no distinction made by Dreyer & Co. between the money so received by them from Ritchie and other moneys paid in to them. All were deposited in

the National Bank of Illinois to the credit of the general deposit account of Dreyer & Co., and at the time of their failure about $40,000 of trust funds received by Dreyer & Co. were similarly situated. The receiver of Dreyer & Co. never got anything from the National Bank of Illinois, that bank, through its receiver, asserting counter-claims against Dreyer & Co. and their receiver, sufficient to absorb everything held by it.

Under the facts, it would seem to be plain that Dreyer & Co. received the money in question in trust for the appellant, and mingled it with their general funds in a manner to completely destroy all identity of it as a specific trust fund.

Whatever may be the equities of this particular case, the rule in Illinois seems to be, that "trust funds can only be pursued when they can be clearly distinguished from other property held by the trustee, or those representing him." Union National Bank v. Goetz, 138 Ill. 127; so, again, in Wetherell v. O'Brien, 140 Ill. 146, it is said:

"When money, which is delivered to a bank, even though it be for some specific purpose, as, for instance, investment in a mortgage security, has been mingled with the funds of the bank, as was done here, there is no reason why the depositor should be preferred above any other creditor. Where a trustee changes the form of the trust property the right of the beneficial owner to reach it and compel its transfer may still exist if the property can be identified as a distinct fund, and it is not so mixed up with other moneys or property that it can no longer be specifically separated. 'If the trust property has been transferred to a *bona fide* purchaser for value without notice, or has lost its identity, the beneficial owner must, and under other circumstances he may, resort to the personal liability of the wrong-doing trustee.' (2 Pomeroy's Eq. Jur., Sec. 1058.) Where a trustee has converted a trust fund into money, and mingled it with his other moneys so that it can not be separated from the latter, the beneficial owner occupies the position of a general creditor of the estate, and can not follow the fund into the hands of an assignee for the benefit of creditors. (The Ill. Tr. & Sav. Bank of Chicago v. Smith, 21 Blatchford, 275, and cases there cited.) Its identification is a prerequisite to the exercise of the right to

follow it. (2 Story's Eq. Jur., Sec. 1259 ) While it may not be necessary to point to the particular pieces of money, or the particular bank bills that were deposited with the trustee, if the trust property be money, yet there must be a preservation of the distinctness of the trust fund. The means of ascertaining the identity of the fund fails where the money has ' been mixed and confounded in a general mass of property in the bank of the same description.' (Doyle v. Murphy, 22 Ill. 502; School Trustees v. Kirwin, 25 Id. 73.)" See also Mutual Accident Ass'n v. Jacobs, 141 Ill. 261.

Again in Bayor v. Am. T. & Sav. Bank, 157 Ill. 62, the court says:

" It has frequently been announced as the law of this State that even in a case where a definite and actual trust fund which possesses all the attributes of a separate and distinct identity has been so mixed and mingled with other funds as to render identification impossible, the *cestui que trust*, in the event of the insolvency of the trustee, is remitted to the position and the rights of a general creditor."

The rule, as last above quoted, is reiterated as the law in Lanterman v. Travous, 174 Ill. 459, where it is added:

" It does not affect the question that an action may lie against the defaulting trustee for his wrongful act."

If a distinction may possibly be drawn between the principle decided in the cases referred to, and that applicable to the facts of this case, we can not make it.

The Superior Court did not err in deciding that appellant is not entitled to a preference over the general creditors of Dreyer & Company.

But it is assigned for error, and the point is pressed in argument, that it was error not to allow appellant's claim as a general creditor, while disallowing it as a preferred claim.

Appellee makes no answer to the point, and we think of none.

The order appealed from, decreed that appellant's petition " be dismissed for want of equity, with costs against petitioner."

If it might be suggested that the only prayer of the peti-

tion was that petitioner's claim should take precedence over all claims of general creditors and be paid in full, still we think it was error not to permit the petitioner to have what in manifest equity he was entitled to—a share with the general creditors.

For the error in that behalf, the decree must be reversed and the cause remanded.