## National Life Insurance Company of Montpelier, Vermont, v. Asa F. Mather, Receiver, et al.

### Gen. No. 4,425.

1. TRUST FUND—*when money in hands of bank is.* Where there has been no course of dealing between the parties but securities are sent to a bank with instructions simply to collect, the collection of the fund establishes the relation of debtor and creditor between the parties; but when the paper is accepted for collection under express directions to collect and remit, then the money in the hands of the bank is a trust fund.

2. TRUST FUND—*when property in the hands of bank constitutes.* While in a given case a bank may have had no authority to accept payment in anything but money, yet when it does accept other property, such property becomes charged with the equitable rights and interests of the *cestui que trust,* if he chooses to follow it.

3. RECEIVER—*rights of, in trust fund.* Where a particular fund in the hands of an insolvent constituted a trust fund, the receiver of such insolvent takes in such fund only such equities as the insolvent had therein, if any it had.

4. TITLE—*when does not pass.* Where a customer of a bank has left with it for investment a particular sum of money and the bank invests upon his account a larger sum of money, no title to the security taken by such bank, either legal or equitable, passes to such customer where he did not by word or act accept the security so taken.

5. PRESUMPTION—*what prevails, where bank makes payments holding both general and trust funds for customer.* Where a bank holds funds on deposit for a customer, and likewise trust funds designated to be used for a particular purpose, the presumption is that payments made by it for such customer, not for purposes of investment, are from the deposit and not from the trust funds.

Petition in chancery. Appeal from the Circuit Court of Will County; the Hon. CHARLES B. GARNSEY, Judge, presiding. Heard in this court at the October term 1904. Reversed and remanded with directions. Opinion filed March 8, 1905.

SAMUEL WARE PACKARD and DEFOREST M. NEICE, for appellant.

BENJAMIN OLIN and JOHN W. D'ARCY, for appellees.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

On the 31st of August, 1902, Trowbridge and River Co.

of Chicago, acting for appellant, sent to the Exchange Bank of Lockport, Illinois, for collection and remittance, two bonds of the village of Lockport of $500 each, and some interest coupons. They were payable to bearer and became due September 1, 1903. The bonds, with interest on them, amounted to $1,050, October 5, 1903, and on that day were paid by the village, by delivering to the bank a tax warrant issued September 22nd, against the taxes levied for 1903 and due April 1, 1904, payable to the Exchange Bank of Lockport, which tax warrant was received and accepted by the bank, the bonds stamped paid and delivered to the president of the village board, who made the payment. The bank suspended October 21st and some two or three days before its suspension, the treasurer of the village paid the bank the interest coupons amounting to $142.74, by his check drawn on said bank. At the time, his account showed a balance of some $1,200 or $1,500. The check was charged to his account and the amount entered on a collection slip by the bank. No remittance was ever made to appellant's agent.

On the 21st of September, appellee, Brunson, called at the bank and inquired of Butler, the cashier, if he knew of any place he could invest $1,000 so that it would earn something. He had the money in a safety deposit box. Butler advised him to invest in a Lockport bond and agreed to attend to it for Mr. Brunson, who thereupon delivered the $1,000 to Mooney, a clerk in the bank, who at the direction of the cashier gave him a receipt which reads as follows:
" Received of E. S. Brunson One Thousand Dollars for investment.

Exchange Bank, Lockport, Illinois.
W. H. Mooney."

Mooney testified that afterwards, and some two or three weeks before the bank failed, Butler, the cashier, handed him the $1,050 tax warrant received from the village president and told him upon the payment of $50 by Brunson to turn the warrant over to him. On the 21st of October; before the $50 was paid by Brunson or any communication had

with him regarding it, and while the warrant was still in the bank, the bank suspended and Asa F. Mather was appointed receiver and took possession. On the 13th of November, Brunson tendered the receiver $50.50 and demanded the tax warrant, but his demand was refused and afterwards both he and appellant filed intervening petitions in the receivership proceedings, each claiming the tax warrant, and appellant further claiming a preference over other general creditors as to the $142.74 collected by the bank on the interest coupons. Pending the litigation, by consent of the court and all parties, the receiver collected the money and holds it subject to the final order of the court.

Appellant contends the tax warrant was received by the bank as its agent in payment of the bonds above mentioned and that it was held in trust for appellant's benefit, and also that the $142.74 was held in trust for it, while appellee, Brunson, claims the warrant was purchased with money left by him with the cashier for the purpose and that it was therefore held in trust for him..

The court decreed appellant a preference as to the proceeds of the tax warrant in excess of $1,000 but disallowed its claim as to the $1,000 and also as to the $142.74 and decreed that as to these sums appellant should share *pro rata* with other creditors. The claim of Brunson was allowed as to $1,000 and that amount ordered paid him by the receiver from the proceeds of the tax warrant. The National Life Insurance Co. of Montpelier, Vermont, appeals.

The tax warrant was not kept with the bills receivable of the bank, but was found in what is called the collection wallet by the receiver. We do not understand the receiver, who has filed a brief in this court, to claim seriously the proceeds of the tax warrant. True, he argues that appellant is not entitled to them, and says it might be of benefit to the general creditors of the bank if the court were to hold, under the law and facts, that they belong to neither of the claimants, but are assets of the bank. His brief is principally devoted to combating appellant's contention

that it is entitled to a preference to the $142.74 and that if Brunson is given a preference to the proceeds of the tax warrant, then it should be allowed a preferred claim to that amount.

The first question to be determined is as to what the relation between appellant and the bank was. It cannot reasonably be contended that the bank did not receive the tax warrant in payment of the bonds of the village of Lockport it held for collection for appellant. William Keough, president of the village board, testified he paid the bonds to the bank and the $50 interest on them with the tax warrant, that he requested the bank to stamp them paid, which it did, and then delivered them to him.

Althought the authorities are not all in accord upon the question, the great weight appears to support the position that where there has been no course of dealing between the parties, and securities are sent to a bank with instructions simply to collect, the collection of the fund establishes the relation of debtor and creditor between the parties, but when the paper is accepted for collection under express directions to collect and remit, then the money in the hands of the bank is a trust fund. In the latter case the owner would, in case of failure or insolvency of the bank, be entitled to a preference over general creditors. Zane on Banks and Banking, sections 133, 341; Wallace v. Stone, 107 Mich. 190, and cases there cited; Ins. Co. v. Kimble, 66 Mo. App. 370; Griffin v. Chase, 36 Neb. 328; Mad River Nat. Bank v. Melhorn, 8 Ohio Cir. Ct. Rep. 191; People v. Bank of Dansville, 39 Hun, 187; Boone County Nat. Bank v. Latimer, 67 Fed. Rep. 27; 5 Cyc., p. 501. A large number of cases on this subject will be found cited and reviewed in the above cases. Under these authorities the bank, in our opinion, was a trustee in collecting the bonds and held what it received in payment, whether it was money or other property, in trust for appellant. While the bank had no authority to accept payment in anything but money, yet when it did accept other property, such property became charged with the equitable

rights and interests of the *cestui que trust*, if it chose to follow it.   Mr. Story in his work on Eq. Juris., vol. 2, sec. 1258, says:   "The general proposition which is maintained both at law and in equity upon this subject is, that if any property in its original state and form is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust or give the agent or trustee converting it, or those who represent him in right (not being *bona fide* purchasers for a valuable consideration without notice) any more valid claim in respect to it than they respectively had before such change.   An abuse of a trust can confer no rights on the party abusing it or on those who claim in privity with him.   This principle is fully recognized at law, in all cases where it is susceptible of being brought out, as a ground of action or of defense in a suit at law.   In courts of equity it is adopted with a universality of application."   In the two following sections the rule is illustrated by examples.   This rule is sustained in Woodhouse v. Crandall, 197 Ill. 104;  White v. Sherman, 168 Ill. 589;  Breit v. Yeaton, 101 Ill. 242;  2 Perry on Trusts, sections 835 and 836.   The village bonds sent to the bank for collection and remittance were by it held in trust for appellant, and when they were converted into the tax warrant, it became impressed with the trust, and, as against everybody except a *bona fide* purchaser without notice for a valuable consideration, appellant was entitled to it.

It is evident from the testimony that the warrant never became, and never was treated or considered by the bank officers as bank assets.   No record was made of it in the books, nor was it kept with the bills receivable.   As before stated it was found by the receiver in the collection wallet where it had been put by Mooney by direction of the cashier.   The receiver took it subject to the same rights of appellant that existed against it in the hands of the bank. Link Belt Machinery Co. v. Hughes, 174 Ill. 155;  Union Trust Co. v. Trumbull, 137 Ill. 146.   The chancellor before whom this cause was tried must have held the same view

of the law, and he must also have held that the bank occupied the relation of trustee to appellant for at least a part of the warrant, or he could not have ordered the receiver to pay to appellant in preference to the general creditors, the proceeds of it in excess of $1,000. It appears to us, that if the tax warrant was received and held by the bank in trust for appellant, it was because it was received in exchange for other trust property of appellant held by it, and that a part of it could not be held in trust under such circumstances and a part not so held. If the warrant had not been received in payment of the bonds, but had been purchased with Brunson's money, then appellant would not have been entitled to be preferred as to any part of the proceeds. But in our opinion the evidence does not warrant the conclusion that the tax warrant was purchased with Brunson's money. We have before quoted from the testimony of the village president as to the circumstances attending the delivery of the warrant to the bank. It does not appear that Brunson knew or ever heard of the tax warrant until after a receiver had been appointed. He says when he inquired of the cashier, Butler, about making the investment of his $1,000, Butler spoke of a Lockport bond. Assuming tax warrant was meant instead of bond, he says no mention was made of any particular warrant, that he did not know the amount it would be for, but Butler said he thought $1,000. Brunson delivered the $1,000 to Mooney, the bank clerk, who gave the receipt above quoted. Mooney testified he put the money in a package and put it in the cash drawer where all money received from depositors and others in regular course of business was placed; that it was the habit of Mr. Butler to take the money from there and put it in the safe for the night, but that he did not know what became of this money; that Mr. Butler had charge of the affairs of the bank and he worked under his instructions. He further testified he made no entries with reference to the $1,000 and could not say whether it went into the cash of the bank or not. The receiver testified he had never seen any entries

of it in the books. One of three things must have happened to it: It was either mingled with the bank's money and became a part of its assets, or was lost or stolen, but as the question is here presented we do not deem it necessary to determine what became of it. One thing is clear, and that is, that it was not used in purchasing the tax warrant. The most that can be said is, that, when Butler accepted the tax warrant in payment of the bonds, he intended to turn it over to Brunson and remit the $1,000 to appellant. If this was the intention we still are of opinion Brunson never became the equitable owner of or entitled to the warrant or its proceeds. He had only left $1,000 for investment and the warrant was for $1,050. He had not authorized the purchase of or investment in a security of so large an amount. Evidently Butler did not consider it Brunson's property or that he was under any obligation to accept it, for Mooney says when Butler handed him the warrant some two weeks before a receiver was appointed, "he told me upon the payment of fifty dollars from Mr. Brunson I was to turn that over to him." Under such circumstances we do not think Mr. Brunson ever acquired title to the warrant. Mathews v. Cowan, 59 Ill. 341; M. C. R. R. Co. v. Phillips, 60 Ill. 190.

We are also of opinion appellant was entitled to a preference over the general creditors for the $142.74. The bank received this money in trust for appellant by accepting the village treasurer's check for that amount and charging it to his account, which then showed a much larger balance. At the time, the bank had on hand in cash as much as $2,500, and never had any less for some three months prior and up to and at the time it suspended. This sum of trust money then constituted a part of the funds that passed into the hands of the receiver, and the general creditors had no right to it. It was not necessary that appellant should be able to trace and identify particular pieces of money in the bank, and the bank having at all times thereafter had more than that amount in cash on hand, the presumption is that what money was paid out

after receiving this sum, was its own money, which it might lawfully pay out, and not the trust fund. Woodhouse v. Crandall, *supra;* Fire & W. Co. v. Wilkinson, 119 Mich. 656.

It is insisted that the instructions to the bank from appellant's agent to "remit proceeds in Chicago or New York exchange," would not make the bank a trustee, but established the relation between it and appellant of mere debtor and creditor, and our attention is called to two Tennessee cases which appear to sustain that view, but we do not think them in harmony with either the weight of authority or the better reason. The direction to remit in Chicago or New York exchange did not mean that the bank could keep the money and send appellant its own worthless check or draft. It meant the remittance of that which would be the equivalent of coin or currency, and contemplated that the check or draft should be drawn on some bank where funds had been previously provided by the drawer for its payment. It meant, as said in appellees' brief, "as commercially understood, money, cash, dollars." It meant that the proceeds of the securities should be remitted, and this would preclude the idea of any consent of appellant to become the bank's creditor. Mad River Nat. Bank v. Milhorn, 8 Ohio Cir. Ct. Rep. 191; People v. Bank of Dansville, *supra*, and cases therein cited.

The order and decree of the Circuit Court is therefore reversed and the cause remanded with directions that a decree be entered that the receiver pay appellant all the proceeds of the tax warrant, and also that he pay appellant as a preferred claim $142.74, and that the claim of appellee, Brunson, to the proceeds of the tax warrant, or any part thereof, be disallowed. One-tenth of the costs in this court will be taxed to the receiver and the remainder to appellee, Brunson.

*Reversed and remanded with directions.*