### In re CITY BANK OF DOWAGIAC.

(District Court, W. D. Michigan, S. D.    May 21, 1910.)

BANKRUPTCY (§ 188*)—CLAIMS—LIENS.

 Before becoming bankrupt a Dowagiac bank collected a check payable to a Chicago bank, and later drew a draft for the amount on its New York correspondent, payable to the Chicago bank. The proceeds of the check were mingled with the Dowagiac bank's general funds. That bank having closed when the draft was presented, its New York correspondent refused to pay, though having sufficient funds, which were later transferred to the trustee. *Held,* that there was a lien on such funds to the amount of the draft.

 [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

In the matter of the City Bank of Dowagiac, bankrupt. From an order of the referee disallowing his claim as a lien against a particular fund, Karl H. Nelson appeals. Modified.

Clyde W. Ketcham, for claimant.
Charles E. Sweet, for trustee.

DENISON, District Judge. Prior to February 8, 1908, there were two banks doing business in Dowagiac—the City Bank, now bankrupt, and the Bank of Lee Bros. Mr. Nelson carried an account with Lee Bros., and also with the Harris Bank, at Chicago. Desiring to transfer some of his funds from the former to the latter bank, he drew his check, January 31st, for $500 upon his account at Lee Bros.' Bank, payable to the Harris Bank, and sent the check to the payee. The Harris Bank, having received this check, sent it, for collection, to its correspondent, the City Bank of Dowagiac. On February 3d, the City Bank presented the check to the Lee Bros. Bank, and at the end of that day the amount of the check was included in a draft given by the Lee Bros. Bank to the City Bank, and drawn against the Detroit de-

positary of Lee Bros. The specific fund here disappears from sight. The City Bank used this Detroit draft and mingled the proceeds with its general funds.

Instead of remitting, on that day, the $500 of Mr. Nelson's money, of which the City Bank thus obtained possession, it did nothing until February 5th, on which day it drew its draft for the net proceeds, $499.50, against its New York depositary, the National City Bank; and this draft, payable to the Harris Bank, it mailed to the payee. The Harris Bank forwarded this draft, for collection, to New York; but before it could, in due course, be presented to, and paid by, the National City Bank, the City Bank of Dowagiac had, on February 8th, closed its doors, and thereupon the National City Bank of New York refused to pay this draft.

On February 5th, when the City Bank thus drew against its New York depositary, it actually had, to its credit, in that depositary, after the payment of outstanding drafts, only about $100; but it either had, at that time, funds in transit to its New York depositary, or afterwards transmitted such funds, so that, on February 8th, or 10th, when the draft was presented at New York, there was, in this depositary, as a credit to the City Bank, a fund of a little over $2,000. This fund was sufficient to pay all drafts which had been made against it, including the one in question, and this fund has been paid, by the National City Bank of New York, to the trustee.

It is clear beyond dispute that Nelson is not a general creditor, but that this money, when received by the City Bank, was a trust fund, belonging to Nelson; and the only question in controversy is the selection of the property to which Nelson's lien attaches. The referee gave him a lien only upon the general balance of cash on hand in the vaults of the bank, at Dowagiac, when it closed; and, as this amount was only $495, and there are a large number of other preferred claims against the same fund, Nelson will receive, from this lien, nothing of consequence. He appeals from the disallowance of his claim as a lien against the fund in the National City Bank of New York on February 8th, and since transferred to the trustee.

I think this latter lien should be allowed. My understanding of the situation is that on February 5th, and because of the mingling of this fund, by the City Bank, with its general funds, Nelson had a lien upon such general funds. This was a floating, indefinite lien, and it could be localized and made specific, either by Nelson's act in seizing sufficient of such funds to satisfy it, or by the act of the City Bank in appropriating sufficient of such funds for that purpose, in which appropriation Nelson, or those representing him, should join or acquiesce. Such specific appropriation was made by the City Bank, when it drew its draft for that purpose against its New York depositary, and had already furnished, or then did furnish, to such depositary, funds sufficient to meet this draft. I think this appropriation of a fund for this purpose, followed by Nelson's use of the draft and demand for the fund so appropriated, established and fixed the lien for $499.50 against such fund, and the trustee should pay to Nelson this amount, unless there are other conflicting liens against the same fund. The same considerations which led the Court of Appeals in Board

of Commissioners v. Strawn, 157 Fed. at page 52, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100, to the conclusion that the lien, in that case, did not attach to funds in the correspondent or depositary bank, lead me, in this case, to the contrary conclusion. Paraphrasing, I may say:

"That the moneys remitted [to New York] were the trust moneys [by substitution] is to be presumed; for the presumption, upon which equity acts with respect to the character of the funds placed by the bank in special deposit with its New York correspondent, is that it placed there the money which it was obligated to send there for this very purpose."

I think the general, floating lien, which otherwise would not have extended to this item, was, by the act of the parties, localized and specialized, and attached to this particular property.

The situation is analogous to that considered by Judge Ray in the Northrup Case (D. C.) 152 Fed. 763, if we consider the fact that in the present case the City Bank, having, on February 3d, converted Nelson's money to its own use, did, on February 5th, transfer to Nelson's credit the same amount of its own money in its New York depositary, and thus create a special deposit in the New York bank, payable to Nelson. Judge Ray says:

"It would be extremely and ridiculously technical to assert that, where a wrongdoer, so far as he can, rights a wrong committed in converting the money of another, by substituting at a subsequent time other money of his own to make good that converted, the beneficial owner may not claim and hold the substituted money or property as impressed with precisely the same trust as the original fund. * * * It does not lie with the wrongdoer or his assignee or trustee in bankruptcy who has made the substitution, to say that the substituted thing is neither the trust property itself nor its proceeds."

The order of the referee should be modified, so as to allow the preferential lien against $499.50 of the New York fund, and this special lien would seem to amount to a waiver of the general lien against funds on hand at Dowagiac.