The People of the State of Illinois ex rel. Andrew Russel, Auditor of Public Accounts (Complainant), v. Auburn State Bank et al. (Defendants). In the Matter of the Intervening Petition of the St. Paul Milling Company, Appellee, v. Herman H. Krueger, Receiver of Auburn State Bank, Appellant.

## Gen. No. 25,082.

1. BANKS AND BANKING, § 59*—*when owner of proceeds of draft entitled to preference on payment of claims by receiver.* Where a draft is forwarded for collection and remittance and the collection is made, the proceeds become a trust fund for the benefit of the forwarder, and in case of the failure or insolvency of the bank, the owner of the trust fund would be entitled to a preference over general creditors.

2. BANKS AND BANKING, § 59*—*when owner of proceeds of draft entitled to preference on payment of claims by receiver.* Where a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

bank collected drafts for a shipper and deposited the trust money so received in another bank as its own, the presumption was that the money drawn out by the depositor was its own, and that the balance which remained included the trust fund which it had no right to use, and the shipper was entitled to have his claim allowed as a preferred claim to be paid by the receiver of such depositor bank, before paying any other claims of the general creditors.

3. BANKS AND BANKING, § 59*—*when mixing of funds does not deprive claimant of right to priority on payment of claims by receiver.* Where it was conceded that a fund collected by a bank for its correspondent, and deposited in another bank as its own, was impressed with a trust, the mixing of the fund with other funds in the possession of the latter bank so as to lose its identity did not preclude the owner of the fund from claiming priority over the general creditors of the depositor bank.

4. BANKS AND BANKING, § 59*—*when owner of proceeds of draft entitled to priority on payment of claims by receiver.* One for whom a bank, before it failed, had collected a draft, was entitled to priority over general creditors, even if such bank had disposed of the identical proceeds before the receiver came into possession; and whatever such trustee bank had in its possession in various banks constituted the trust fund.

Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in this court at the March term, 1919. Reversed and remanded with directions. Opinion filed October 27, 1919. Rehearing denied November 10, 1919. *Certiorari* denied by Supreme Court (making opinion final).

RATHJE, WESEMANN & VAN SCHAICK, for appellant.

LAWRENCE P. CONOVER, for appellee.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

The St. Paul Milling Company filed its petition in Re Auburn State Bank, insolvent, seeking a preference for its claim of $4,846.30. The chancellor granted this to the extent of $1,183.97. By this appeal the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

bank contests any preference, while the petitioner by cross errors claims preference for a larger sum.

There is no dispute as to the facts. On May 5, 1917, the St. Paul Milling Company of Minnesota shipped two carloads of flour to the Acme Milling Company in Chicago, and at the same time forwarded to the Auburn State Bank of Chicago two drafts on the Acme Company, each for $2,423.15, covering the amount of said sales, with bills of lading attached, with directions for collection and return of the proceeds to the shipper. These were duly received by the bank and presented to the Acme Milling Company, which on May 18 gave its check to the bank in payment of one draft, which check was drawn on the South Side State Bank of Chicago, payable to the order of the Auburn State Bank, and deposited by it on the same day with the First National Bank of Chicago to the credit of the said Auburn State Bank. This check was paid by the South Side State Bank on May 19. On this same day, namely, May 19, the Acme Milling Company also gave its check, dated May 18, to the Auburn State Bank in payment of the other draft of $2,423.15; that check was likewise drawn on the South Side State Bank and payable to the order of the Auburn State Bank, which likewise deposited it on the same day with the First National Bank, and this latter check was paid by the South Side State Bank on May 21. These deposits of the Auburn State Bank with the First National were in pursuance of an arrangement between them whereby checks, drafts and other items were deposited with the First National in due course of business. The Auburn State Bank received credit upon the books of the First National for the respective amounts of the checks of the Acme Milling Company at the time of the deposits, namely, May 18 and May 19 respectively. At the close of business on May 19 the account of the Auburn State Bank with the First National was overdrawn to an amount of over $5,000.

At the close of business on May 21, which was the day when the last check of the Acme Milling Company was paid, there was a balance of $1,183.97 to the credit of the Auburn State Bank on the books of the First National Bank.

On May 22, 1917, the Auburn State Bank, hereinafter called the bank, which was a corporation duly organized to conduct a general banking business in Chicago, was closed by the Auditor of Public Accounts of the State of Illinois, and on May 31 the auditor filed a bill of complaint charging improper conduct of the business, depreciation of resources and insolvency. Pursuant to the prayer of the bill a receiver was appointed, who is still in charge. When the bank was closed there was a balance of $8,408.59 to its credit on the books of the First National, which sum, less certain debits and charges which reduced it to $6,417.62, was paid to the receiver. It is also a fact of importance that on May 19 the bank had on hand cash $4,191.15, balance in other banks $535.66, total $4,726.81, and that this was the smallest sum on hand belonging to the bank from the time the first of the checks was collected until the bank was closed by the State Auditor on May 22.

The St. Paul Milling Company, the petitioner, claims that the proceeds of both checks constituted a trust fund, and that it is entitled to have its claim for the total amount allowed as a preferred claim to be paid by the receiver before paying any other claims of the general creditors.

Where a draft is forwarded for collection and remittance, and the collection is made, the proceeds become a trust fund for the benefit of the forwarder. *Goshorn v. Murray,* 197 Fed. 407; *National Life Ins. Co. v. Mather,* 118 Ill. App. 491. In the opinion in the latter case are many citations supporting this rule. These authorities also hold that in case of failure or insolvency of the bank the owner of the trust fund

would be entitled to a preference over general creditors. It seems to be conceded that this general rule is applicable to the present transaction.

Conceding that the fund is impressed with a trust, the bank says that this will avail the petitioner nothing, because the fund was so mixed with other funds in the bank's possession as to lose its identity, and in fact was dissipated by the bank, therefore the petitioner stands merely as a creditor like the others.

In Story on Equity Jurisprudence, vol. 2, sec. 1258, the rule is thus stated:

"The general proposition which is maintained both at law and in equity upon this subject is, that if any property in its original state and form is covered with a trust in favor of the principal, no change of that state and form can divest it of such trust or give the agent or trustee converting it, or those who represent him in right (not being bona fide purchasers for a valuable consideration without notice) any more valid claim in respect to it than they respectively had before such change. An abuse of a trust can confer no rights on the party abusing it or on those who claim in privity with him. This principle is fully recognized at law, in all cases where it is susceptible of being brought out, as a ground of action or of defense in a suit at law. In courts of equity it is adopted with a universality of application."

This rule is supported by citations; also supporting it are *White v. Sherman,* 168 Ill. 589, and *Breit v. Yeaton,* 101 Ill. 242; 2 Perry on Trusts, secs. 835-36, and, conspicuously, the case of *Woodhouse v. Crandall,* 197 Ill. 104. In the last-mentioned case the court distinguishes most of the decisions which are now presented by the bank in support of its contention. It was there held that in such cases it is not necessary that the money or bank bills should be identified; that the suit is not to recover a specific thing but a certain sum of money held in trust, and that it is the identity of the fund and not the identity of the money which is

to be established; that it makes no difference if the fund was mingled with other moneys so as to lose its identity as currency; that the character of the fund held by a bank in fiduciary capacity is not changed by being placed with other moneys. It was also held that where moneys are so mingled the law will presume that the trustees drew out their own money first, and what remained belonged to the trust, but if it could be shown that the entire fund was withdrawn or actually dissipated so that none of it remained, the rule would necessarily be different; that if the fund has once been disposed of no charge can be made against the general estate to the exclusion of other creditors, but the fact that the same bills or currency were not retained or that the fund was traced into a larger sum of money in the same bank does not destroy its identity.

Following these authorities there can be little doubt as to the correctness of the chancellor's decree in permitting petitioner a preference, at least as to $1,183.97, which was the balance to the credit of the bank on the books of the First National at the close of business May 21, the date the second check of the Acme Milling Company was paid. At all times from that date until the balance was paid to the receiver the amount to the credit of the bank with the First National exceeded said sum of $1,183.97. Applying strictly the presumption of law as to the payment of a check in cash, this money might be said to be not only the identical fund belonging to the petitioner, but also the identical money. It has been held that any credit on the books of a bank is presumptively a cash credit. *In re City Bank of Dowagiac,* 186 Fed. 250. As to the suggestion that this balance may not be a part of the proceeds of the checks because it may include other items of credit, it is sufficient to apply the rule above stated, namely, that where the trustee has deposited trust money in

a bank as his own, the presumption is that the money drawn out by the depositor is his own, and that the balance which remains includes the trust fund which he had no right to use. *Woodhouse v. Crandall, supra.*

Petitioner contends that not only were the proceeds of the collections subject to a trust to the amount of the balance in the possession of the First National Bank, but that such trust should be extended to cover the smallest sum on hand belonging to the Auburn Bank whether in its own possession or to its credit in other banks, from the time the first of the checks was collected until the bank was closed by the state auditor on May 22; that during that period such sum reached the lowest point on May 19, when as we have seen the bank had in cash and to its credit in other banks $4,726.81. Petitioner insists that it is entitled to a preference to the extent of this amount.

It is conceded that if the evidence showed that the bank during this time had no money of its own, then it might be said that the trust fund had been dissipated; but, on the contrary, the evidence shows not only that it had at least the amount last mentioned on May 19, but that subsequent to the closing of the bank sufficient money was deposited with the First National to give it a balance to its credit of over $6,000. Upon the premise that a fund once impressed with a trust remains unchanged regardless of the physical change in the moneys representing the fund, and applying the rule that whatever the trustee withdraws will be presumed to be his own money, and the balance remaining the trust fund, it would seem logically to lead to the conclusion that whatever amount the trustee has in his possession must constitute the trust fund, whether such sum may be in one place or another as to physical location. We fail to see how the mere fact that the bank had its moneys in different places could change the character of the trust fund. To confine the preference to the amount on credit with the First National

Bank is to determine the identity of the trust fund by the identity of the money. This is contrary to the rule.

Tending to support this view is the opinion in *In re City Bank of Dowagiac*, 186 Fed. 250, where the court quotes approvingly from *In re Northrup*, 152 Fed. 763:

"It would be extremely and ridiculously technical to assert that where a wrongdoer, so far as he can, rights a wrong committed in converting the money of another, by substituting at a subsequent time other money of his own to make good that converted, the beneficial owner may not claim and hold the substituted money or property as impressed with precisely the same trust as the original fund. * * * It does not lie with the wrongdoer or his assignee or trustee in bankruptcy who has made the substitution, to say that the substituted thing is neither the trust property itself nor its proceeds."

In *Macy v. Roedenbeck*, 227 Fed. 346, the doctrine is thus stated:

"Where a trustee mingles trust funds and makes payments out of the common fund, there is a sufficient identification of the remainder, not exceeding the smallest amount the fund contained subsequent to the commingling, because the legal presumption is that he regarded the law, and neither paid out nor invested in other securities or property the trust fund, but kept it sacred. * * *

"The modern and more equitable doctrine permits the recovery of a trust fund from one not an innocent purchaser, and into any shape into which it may have been transmuted, *provided he can establish the fact that it is his property, or the proceeds of his property, or that his property has gone into it and remains in a mass from which it cannot be distinguished.*"

We are in accord with these statements and are of the opinion that the better rule is that one for whom a bank, as trustee, before it fails, has collected a draft, even if it has disposed of the identical proceeds before the receiver comes into possession, is entitled to pri-

ority with respect to the smallest amount the bank has in its possession from the time of the collection until it ceases doing business. We hold, therefore, that the chancellor was correct in giving petitioner preference as to $1,183.97, but that it was error to deny the prayer of the petitioner upon its claim for preference as to $4,726.81, the sum in the hands of the bank on May 19. The decree will therefore be reversed and the cause remanded with directions to find that petitioner is entitled to a preferred claim to the extent of $4,726.81. Costs of this appeal are to be taxed against the appellant.

*Reversed and remanded with directions.*