The People of the State of Illinois ex rel. Andrew Russell, Auditor of Public Accounts of State of Illinois, Appellee, v. Iuka State Bank of Iuka, Appellant.

1. BANKING—*proceeds collected by bank on forwarded note as trust fund.* Funds collected by a bank on a note forwarded to it by another bank are trust funds where the evidence shows that the note was owned outright by the forwarding bank, was forwarded with a letter of instructions for "collection and return" and that such is the language ordinarily used by banks in forwarding paper for collection and remittance; and in such case the rights of the forwarding bank are not affected by the fact that the collecting bank, when it received the note in question, entered it upon its own register of bills receivable and deposited the amount when collected to its own credit.

2. BANKING—*right of special depositor to priority in funds of insolvent bank.* The trust in favor of the forwarder impressed on funds collected by a bank on a note forwarded for collection and remittance, which funds were retained by the collecting bank and deposited to its own credit in violation of the instructions to remit the amount to the forwarder, is impressed on funds in the hands of the collecting bank at the time of its insolvency subsequent to the time of collection, and the forwarder is entitled to a priority in payment for the amount of the note as against general creditors of the insolvent bank to the amount of cash in the insolvent bank at the time of insolvency.

3. BANKING—*assets subject to priority in favor of special depositor of insolvent bank.* The right of priority which a forwarder has in the assets of an insolvent bank which collected the amount of a note forwarded to it for collection and remittance which it retained and deposited to its own credit in violation of the forwarding instructions is not limited to the smallest amount of cash actually on hand during the period between the dates of collection and insolvency, even though such amount is less than the face of

the note, where there was due to such bank from other banks an amount in excess of the amount of the note.

4. BANKING—*when checking credits are equivalent to cash.* The right of a forwarder of a promissory note to a bank for collection and remittance to a priority over general creditors for payment of the amount collected by such bank on the note in question and retained by it in violation of the forwarding instructions is not affected by the fact that the maker of the note paid it by check on the collecting bank and that the account on which the check was drawn was largely created by a deposit of a check of a third person, where the maker's deposit in the collecting bank was at all times sufficient to pay the note in question.

Appeal by defendant from the Circuit Court of Clay county; the Hon. F. R. DOVE, Judge, presiding. Heard in this court at the October term, 1922. Reversed and remanded with directions. Opinion filed February 6, 1923. Rehearing denied March 27, 1923. *Certiorari* denied by Supreme Court (making opinion final).

ELBERT B. VANDERVORT, for appellant.

JAMES H. SMITH and CREIGHTON & THOMAS, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On the 24th day of May, 1921, the doors of the Orchard City State Bank of Xenia, Illinois, were closed. On the 24th day of June, 1921, the State Auditor filed the original bill in this cause for the dissolution of that bank and the appointment of a receiver to wind up its business, and Arthur W. Croughan was appointed receiver. At the time the doors of the bank were closed by the State Auditor, both the president and cashier had absconded. At the March term, 1922, of the circuit court of Clay county the appellant, Iuka State Bank of Iuka, Illinois, filed its intervening petition praying that its claim against the insolvent bank be allowed as a preferred claim against the general creditors. On a hearing of the cause the court allowed the claim of the Iuka State Bank in the sum of

$2,602.06, but denied that such claim was entitled to any preference and ordered that the same should be paid pro rata from the assets of the insolvent bank in the hands of the receiver in due course of administration. From that decree the Iuka State Bank prosecuted this appeal. On April 22, 1921, the appellant bank forwarded to the Orchard City State Bank certain notes for collection or renewal. Accompanying these notes was the following letter:

"THE IUKA STATE BANK,
                    Iuka, Illinois, 4-22-21.
The Orchard City State Bank,
                    Xenia, Ill.
Dear Sir:
  We enclose herewith for collection and return, items as stated below:
                    Respectfully,
              HERSCHEL D. HOLSTLAW, Cashier.
  Please report by number or date of letter."

There followed a list of five notes and also the following instructions: "Notes No. 7453 and 7456 please take up, others can be paid or renewed. Protest all paper unless otherwise instructed by us and return promptly; documents attached must be surrendered on payment only."

Among these notes was that of John H. Henson for $2,500, which bore the number 7454. When these notes were received by the Orchard City State Bank they were not set down on a collection register, but were entered on the register of bills receivable, the same as though they were owned by the Orchard City State Bank. On April 26, 1921, Henson paid his note by a check on his account in the Orchard City State Bank. This amount was entered to the credit of the Orchard City State Bank and was never remitted to appellant, although the cashier of appellant several times inquired of that bank why remittance had not been made. On April 23, 1921, Henson had to his account in the Orchard City State Bank $3,361.39. On

April 25 he made a deposit of $6,701.15 in the form of a voucher on the B. & O. Railroad. At the time he paid the note on the 26th day of April he also paid a $2,000 note which the Orchard City State Bank held against him, and his check was for the sum of $4,658.90. On the 24th day of May, 1921, the day the bank closed, he had to his credit $3,793.84. From the day this note was paid until the bank closed, on May 24, there was cash in the bank and due from other banks the amount shown by the following table:

| 1921 Date. | Cash in Bank. | Due from Corresponding Banks. |
|---|---|---|
| Apr. 26 | $4441.29 | $13660.02 |
| Apr. 27 | 4555.17 | 13904.90 |
| Apr. 28 | 5513.00 | 12178.96 |
| Apr. 29 | 4903.88 | 12745.19 |
| Apr. 30 | 3708.16 | 13656.21 |
| May 2 | 5226.97 | 14015.04 |
| May 3 | 5434.19 | 16244.43 |
| May 4 | 5031.60 | 15739.14 |
| May 5 | 4812.65 | 16585.64 |
| May 6 | 4506.54 | 19868.77 |
| May 7 | 3945.31 | 21928.06 |
| May 9 | 4943.19 | 20466.44 |
| May 10 | 6020.06 | 19658.62 |
| May 11 | 5842.70 | 21025.06 |
| May 12 | 5915.46 | 18829.53 |
| May 13 | 5924.27 | 17788.23 |
| May 14 | 5442.13 | 14625.78 |
| May 16 | 5932.94 | 14486.48 |
| May 17 | 5849.24 | 14005.07 |
| May 18 | 5835.54 | 13261.77 |
| May 19 | 5404.63 | 12001.48 |
| May 20 | 2190.26 | 8951.52 |
| May 21 | 1115.43 | 10483.50 |
| May 23 | 3981.69 | 5839.72 |
| May 24 | 3871.54 | 4199.01 |

These are all the facts appearing in the record material to this case.

The record in this case presents two principal ques-

tions: (1) Were the proceeds resulting from the collection of the note in question a trust fund in the hands of the Orchard City State Bank? (2) If so, was this trust impressed on the funds remaining in the bank at the time of its insolvency and is appellant now entitled to a priority over general creditors as against that fund? If either of these questions is answered in the negative the judgment of the court below is correct. If they are both answered in the affirmative the judgment should have been for appellant.

The relation existing between a bank and its general depositors is that of debtor and creditor simply, and such creditors, of course, would share equally in the assets of an insolvent bank. It does not seem to be seriously contended by appellee that the proceeds resulting from the collection of the note were not originally a trust fund in the hands of the Orchard City Bank. The proof shows beyond any question that this note among others was sent to the Orchard City State Bank by the Iuka State Bank for collection and remittance and not for collection and deposit to the credit of the sender. The cashier of the Iuka State Bank expressly stated in the letter forwarding the note for collection as follows: "We enclose herewith for collection and return." He also testified that this is the language ordinarily used by banks in forwarding notes for collection for which remittance is to be made. The evidence also shows that this note was owned outright by the Iuka State Bank. The question in this case is not one between appellant and the Orchard City State Bank, but is between appellant and the other creditors of that bank, and the equities existing between appellant and such creditors should govern and not the equities between the appellant and the Orchard City State Bank.

There is no recognized ground upon which equity can pursue the proceeds of this collection, misapplied by the bankrupt, and impose upon it the character of

a trust except on the theory that the money collected for the note was and still is the property of the appellant, and if appellant is permitted to follow the proceeds of the collection of the note, received by the bankrupt bank upon the payment of the same, and recover it, it is because the property belongs to appellant, whether in its original form of a note or in the substituted form of the money collected thereon. (*Macy v. Roedenbeck*, 227 Fed. 346, L. R. A. 1916C 12.)

As above stated, the evidence clearly shows that the note, at the time it was forwarded for collection, was the property of appellant, and if the instructions were to remit when collected or renewed, the Orchard City State Bank had no authority to deposit with itself the money collected and thus establish the relation of debtor and creditor, but the money still remained the property of appellant and should have been remitted. It seems to be the recognized doctrine of the courts of this State, and also other courts, that where paper has been sent to a bank with instructions simply to collect, the collection of the fund establishes the relation of debtor and creditor between the parties, and in that case there would be no trust. The greater weight of the authorities seems to be, however, that when the paper so sent is accepted for collection under expressed terms to collect and remit, then the money when collected is in the hands of the bank, a trust fund. (*Macy v. Roedenbeck, supra; National Life Ins. Co. v. Mather*, 118 Ill. App. 491; *People v. Auburn State Bank*, 215 Ill. App. 133.)

We are of the opinion the letter of instructions accompanying the note when sent to the Orchard City State Bank expressly instructed that bank to collect or renew the note, and, if collected, to remit the amount collected, and that therefore under the above authorities the amount when collected became a trust fund in the hands of the Orchard City State Bank for

the benefit of appellant. The fact that the Orchard City State Bank when it received this note entered it upon its register of bills receivable the same as though it owned the note, and that when the note was collected it deposited the money to its own credit, could not affect the rights of appellant in the matter. We therefore conclude that the proceeds resulting from the collection of the note in question constituted a trust fund in the hands of the Orchard City Bank.

The second question above stated to arise from this record presents more difficulties. The contention of appellee is that where a definite and actual trust fund, which possesses all the attributes of a separate and distinct identity, has been so mixed and mingled with other funds in the hands of a trustee as to render identification impossible, the *cestui que trust*, in the event of the insolvency of the trustee, is remitted to the position and the rights of a general creditor, and this is correct as an abstract principle of law. Such was the principle, beyond any doubt, applied by the Supreme Court of this State in its earlier decisions to cases somewhat similar to the one at bar. In our opinion, however, that principle is no longer applied by the courts of this State to a condition of facts such as is presented in this case. The latest opinion of our Supreme Court upon the subject in question is reported in the case of *Woodhouse v. Crandall,* 197 Ill. 104. In that case the Supreme Court discussed all the decisions, save three, cited by the relator, appellee, in support of his position. There the sum of $1,500 was specially deposited with the bank as security for the faithful performance of a contract. A receipt or instrument stating the purpose for which the money had been deposited with the bank was given to the depositor. Without the knowledge or acquiescence of the depositor the money was turned over to one of the tellers, who mingled it with other funds of the bank. The ordinary certificate of deposit not subject to check

was executed and pinned to the duplicate receipt. It seems to have been admitted by all the parties that such deposit created a trust in favor of the depositor, but the defense was made that the fund deposited was so mingled with other moneys of the bank that it could not be identified and that therefore the depositor was not entitled to any priority over the other creditors of the bank which had become insolvent. In that case the Supreme Court, speaking through Mr. Justice Cartwright, held: "The suit is not to recover a specific thing, such as particular pieces of money or bills, but a certain sum of money held in trust, and it is the identity of the fund, and not the identity of the money or currency, which is to be established. * * * Again, it makes no difference on the question of identity that the fund was mingled with other moneys of the bank. * * * Money having been placed in the vaults of the bank, the law presumes that the trustees drew out their own money first, and that what remained belongs to the trust. When the firm failed, there was remaining in the vault where this money was put $1,152.66 in cash, which the receiver obtained, and the legal presumption is that this belonged to the trust fund. * * * The evidence supported by the legal presumption establishes the identity of the fund and shows what became of it."

After considering and referring to many cases, the court held that the trust fund was sufficiently identified, and that the trustee was entitled to priority in payment by the receiver to the amount of $1,152.66 cash, remaining in the bank and acquired by the receiver when he took possession. In the case of *Macy v. Roedenbeck, supra,* the Bank of Sully, Iowa, had collected a note and remitted the proceeds to the owner by draft on its correspondent bank at Des Moines, Iowa. When this draft reached the bank at Des Moines the bank of Sully had closed its doors and the draft was dishonored and protested by the Des Moines

bank. The Federal Circuit Court of Appeals, eighth circuit, in that case held that the creditor had a prior claim against the cash remaining in the bank of Sully which was taken over by the receiver.

The Appellate Court of the second district in the case of *National Life Ins. Co. v. Mather, supra,* after holding that moneys received in collection of certain bonds sent to a bank for collection and remittance constituted a trust fund in the hands of the collecting bank, held that the creditor had a lien for a certain amount against the funds on hand at the time such bank became insolvent. In the case of *People v. Auburn State Bank, supra,* in which the same question we are now considering was involved, the Appellate Court for the first district held that the mingling of such fund with other moneys of the bank would not destroy the identity of the trust fund and that the trust creditor was entitled to priority over the general creditors as against the money in the hands of the bank at the time of its insolvency.

The only cases cited by appellee and not discussed in *Woodhouse v. Crandall, supra,* are *Moninger v. Security Title & Trust Co.,* 90 Ill. App. 246; *Otis v. Gross,* 96 Ill. 612; *Lanterman v. Travous,* 174 Ill. 459, and *Hauk v. Van Ingen,* 196 Ill. 20. Without discussing these cases in detail, we deem it sufficient to say that we have given them careful consideration and find nothing in them inconsistent with the holding of the Supreme Court in the case of *Woodhouse v. Crandall.*

The question then arises, if the money collected on this note was a trust fund, and if appellant is entitled to a priority in the payment thereof as against the general creditors, has it such priority against all the assets of the Orchard City State Bank? As above stated, if appellant is entitled to any such priority it is upon the ground that it was the owner of this note and is now the owner of the property into which that

note has been converted. The evidence shows that these proceeds were turned into the general deposits of the bank. Therefore it seems to us that this note must now be considered as in the form of cash and that therefore appellant can only have priority as against the cash in the Orchard City State Bank at the time of its insolvency. The record shows that at the time the doors of this bank were closed there was in the vaults of the bank and turned over to the receiver the sum of $3,871.54, while the claim of appellant is only for about $2,600. There were two days, however, since April 26, the date the note was collected, when there was less than $2,602.06 in the vaults of this bank as follows: On May 20 there were $2,190.26; on May 21, $1,115.43. The question then occurs, is appellant entitled to priority to any greater extent than the smallest amount of money in the Orchard City State Bank at any time since the trust was created? It was stated by the Supreme Court in the case of *Woodhouse v. Crandall, supra:* "If it had been shown that the trust fund was withdrawn or actually dissipated, so that none of it remained in the bank, the rule would necessarily be different." The opinion of the court in that case does not, however, disclose the amount of money on hand by the insolvent bank on the different days between the time the trust was created and the closing of the bank's doors. The judgment of the court simply gives the *cestui que trust* a prior claim against all the cash remaining in the bank. The case of *Macy v. Roedenbeck, supra,* seems to hold that the priority would be limited to the smallest amount on hand subsequent to the commingling of the trust fund with the general fund. However, we do not deem it necessary to decide that question in this case for the reason that on the days when there was a less sum in the vault of the Orchard City Bank than the amount of this trust fund, the Orchard City Bank had due it from other banks the following sums: May 20, $8,951.52, and

May 21, $10,483.50, and on the day its doors were closed there was due it from other banks, $4,199.01. So that there was no time after this trust was created until the doors of the bank were closed that there was not in the vaults of this bank and due it from other banks a far larger sum than the amount of appellant's claim. In passing upon the question whether or not moneys due an insolvent bank from other banks were impressed with or subject to a trust, the Appellate Court for the first district in the case of *People v. Auburn State Bank, supra,* said: "Upon the premise that a fund once impressed with a trust remains unchanged regardless of the physical change in the moneys representing the fund and applying the rule that whatever the trustee withdraws will be presumed to be his own money, and the balance remaining the trust fund, it would seem logically to lead to the conclusion that whatever amount the trustee has in his possession must constitute a trust fund, whether such sum may be in one place or another as to physical location. We fail to see how the mere fact that the bank had its moneys in different places could change the character of the trust fund." In that case the court gave the *cestui que trust* preference in payment as against the money on hand in the bank and due it from other banks. We accordingly conclude, since at no time was the cash on hand and due from banks less than the trust fund, that appellant was entitled to payment of its claim as against general creditors out of the cash in the vault of the Orchard City Bank at the time it closed its doors or out of money due it from other banks. This priority, however, is only as against general creditors, and since there is nothing in the record to show there may not be other creditors entitled to the same or other priority, we cannot determine the exact order in which appellant is entitled to priority. It is claimed by appellee since Henson paid this note not with actual money which

he brought to the bank, but by a check on his account with the Orchard City State Bank, and as that check was given on an account which had been largely created by depositing with the bank a voucher on a railroad company, that the principles announced by the cases above cited do not apply.  We do not believe this distinction is well taken.  In most of these cases which we have cited, the dealings were all by check or other manner of credits and not by actual cash. Further, Henson's deposit in the Orchard City Bank was sufficient to pay appellant's note before he deposited the railroad voucher.

The decree will therefore be reversed and the cause remanded to the trial court with directions to enter a decree finding that appellant is entitled to a preferred claim over the general creditors against the money in the Orchard City State Bank and due it from other banks at the time of its failure which passed to the receiver.

*Reversed and remanded with directions.*