# CHARLESTON.

CENTRAL TRUST COMPANY, *Receiver, etc.* v. BANK OF MULLENS, *et als.*

(No. 6524)

Submitted October 2, 1929. Decided October 15, 1929.

*E. W. Worrell, James M. Mason* and *M. G. Wallace,* for appellant.

LIVELY, JUDGE:

The Federal Reserve Bank of Richmond, intervener in a chancery suit to settle the affairs of the Bank of Mullens, upon being denied priority over the general creditors of the latter bank for its claim, obtained this appeal.

The plaintiff, Federal Reserve Bank of Richmond, had its chief offices in Richmond, Virginia, and the Bank of Mullens was located at Mullens, West Virginia. An agreement was entered into between the two banks whereby the Bank of Mullens was entered on the par list of the plaintiff. Under this agreement, the Bank of Mullens received for collection checks drawn upon itself sent to it by the plaintiff, and if such checks were collectible, it agreed to forthwith remit the

amount thereof to the Federal Reserve Bank at Richmond by draft on certain designated banks, one of which was the First National Exchange Bank of Roanoke, Virginia.

In accordance with this arrangement, on April 14, 1927, the plaintiff bank sent to the Bank of Mullens checks drawn on the latter amounting to $9,954.29. On April 16th unpaid checks aggregating $4,134.06 were returned by the defendant bank to the plaintiff and a draft in its favor for $5,820.23 was drawn on the First National Exchange Bank of Roanoke and sent to the plaintiff. On April 16, 1927, the plaintiff sent to the defendant bank checks aggregating $9,950.08, and on April 18, 1927, the Bank of Mullens returned checks aggregating $3,442.50, and in settlement for the retained checks a draft for $6,507.58 was drawn in favor of the plaintiff on the First National Exchange Bank of Roanoke. Accompanying the checks sent to the Bank of Mullens was a letter stating that they were to be collected and remittance made in accordance with the previous arrangement between the parties. The Bank of Mullens collected the checks by charging the same against the accounts of individual depositors. On April 19, 1927, the drafts on the First National Exchange Bank of Roanoke were presented by plaintiff for payment, but payment was refused on April 20th, because the Bank of Mullens was temporarily closed. The Bank of Mullens had, when it issued the drafts, deducted the amounts thereof from its balance in the Roanoke Bank. At the time the drafts in favor of the plaintiff were drawn on and presented to the First National Exchange Bank of Roanoke, there were funds to the credit of the insolvent bank sufficient to pay them, and this condition continued up to April 20th, the date on which the Bank of Mullens was closed by the state banking commissioner. Subsequently, the First National Exchange Bank of Roanoke applied said funds in its hands on notes (whether due or not does not appear) executed to it by the Bank of Mullens, and later released to the receiver collateral securities pledged on said notes. When the receiver took charge, the amount of cash on hands in the Bank of Mullens was $3,908.59. By stipulation, the amount claimed to be due on the plaintiff's

drafts was reduced to $10,423.68. The trial chancellor affirmed the report of its commissioner in chancery in which the commissioner found that the relation of debtor and creditor existed between the plaintiff bank and the Bank of Mullens after the collections were made; that there was no augmentation of the assets of the latter bank; and, therefore, the plaintiff was not entitled to a priority in the assets of the Bank of Mullens over its general creditors.

The first question to be determined is: What was the relation between the plaintiff and the Bank of Mullens after the latter collected the checks sent to it by the plaintiff by charging the same against the account of the individual depositors? There seems to be almost a unanimity of opinion among the courts that a bank accepting paper for collection is the agent of the party from whom it is received. Morse on Banks and Banking, Vol. 1, 6th Ed., sec. 214, page 547. The conflict arises as to the relationship existing after the collection has been made. In a large number of jurisdictions it is held that the fact of collection changes the status of the parties to that of debtor and creditor. Although, probably contrary to the weight of authority, we are in accord with the modern trend of decisions which supports the rule that in the absence of a reciprocal accounts arrangement between the sending and collecting bank, where paper is sent under a specific agreement clearly evidencing an intent of immediate collection and remittance, the collecting bank as agent of the sender holds the amount collected in trust for it. *State National Bank* v. *First National Bank,* 187 S. W. (Ark.) 673; *First State Bank* v. *O'Bannon,* 266 Pac. (Okla.) 472; *Bank of Poplar Bluffs* v. *Millspaugh,* 281 S. W. (Mo.) 733, 47 A. L. R. 754; *Federal Reserve Bank* v. *Peters,* 123 S. E. (Va.) 379, 42 A. L. R. 742, and note on page 754; *Hawaiian Pineapple Company* v. *Browns,* 220 Pac. (Mont.) 1114; *People ex rel. Russell* v. *Iuka State Bank,* 229 Ill. App. 4; *Sinclair Refining Company* v. *Tierney,* 270 Pac. (N. M.) 792; *State* v. *Excello Feed Milling Company,* 267 Pac. (Okla.) 833; *Griffith* v. *Burlington State Bank,* 277 Pac. (Kans.) 42; *Messenger* v. *Carroll Trust & Savings Bank,* 187 N. W. (Iowa) 545. And this is true even though the collecting bank collects the paper by charging it

against the account of the individual drawer and draws its draft on another bank in favor of the sender for the amount thus collected. *Bank of Poplar Bluffs* v. *Millspaugh, supra; Spokane & E. Trust Company* v. *United States Steel Products Company,* 290 Fed. 884; *Goodyear Tire & Rubber Company* v. *Hanover State Bank,* 204 Pac. (Kans.) 992; *Federal Reserve Bank* v. *Peters, supra; State* v. *Excello Feed Milling Company, supra; Hawaiian Pineapple Company* v. *Browne, supra.* Where, under an agreement to collect and remit, the sender has evinced an intention to make the collecting bank its agent for the purpose of collecting and remitting, to permit the collecting bank at its option to change the intended relationship to that of debtor and creditor by the manner in which the collection is made and the proceeds remitted would be subversive of sound commercial practice. As was said in *Griffith* v. *Burlington State Bank, supra:* "If a bank were to be permitted to change at will the relation of agent to that of debtor, forwarding banks would be compelled to require shipment of currency in order to protect themselves. The effect upon the transaction of business would be so disastrous that the evil consequences would far outweigh the hardship to depositors resulting from application of the principal and agent doctrine to occasional bank failures."

It is contended by the attorney for the receiver that as the transaction above referred to did not result in any augmentation of the defendant's assets, plaintiff should not be permitted to assert a preference over the general creditors of the insolvent bank. In *Bank of Poplar Bluffs* v. *Millspaugh, supra,* the court said in this connection: "Relief has been denied in some cases on the theory that the transaction in judgment did not result in augmenting the assets that passed to the receiver or official acting as receiver of the failed bank. The argument in support of such theory runs about like this: If Ethel Reichert had not drawn her draft on her deposit in the Bank of Puxico, and said bank had failed as it did, it would have failed owing Ethel Reichert $5,000. But, instead of owing Ethel Reichert $5,000 when it failed, the Bank of Puxico owed plaintiff bank $5,000, evidenced by the draft

that it gave plaintiff on the Citizens Trust Company of Gorin. Therefore, there was in effect no difference in the amount of the estate or assets that passed to the commissioner of finance; that the assets that passed to the commissioner of finance were neither increased nor diminished by the whole transaction. But this argument is not sound. It proceeds upon the theory that the Bank of Puxico simply *owed* plaintiff $5,000; that only the relation of debtor and creditor existed. Such, however, under the authorities we prefer to follow, was not the true relation between the plaintiff and the Bank of Puxico. The Bank of Puxico *owed* plaintiff $5,000 because it *held* $5,000 of plaintiff's money—as much so as if plaintiff had merely left $5,000 with the Bank of Puxico for safe keeping, sealed and labeled, and not intended for deposit. From the time the Reichert draft was presented and accepted, the Bank of Puxico held *plaintiff's* $5,000, and this $5,000 passed to the commissioner of finance and thereby increased the funds in his hands $5,000 above the actual assets of the Bank of Puxico.'' In *Griffith* v. *Burlington State Bank, supra,* it was said: ''When a check on a bank is sent to the bank for collection it acts as agent of the sender to make the collection, and when the collection is made, it gets the proceeds in the same capacity as if the collection were made from another bank across the street. In this instance, the bank made the collection by charging the check to the account of the administrator. The check was authority from the administrator (drawer) to make the charge, and his funds subject to check were reduced by the amount of the check. Having made the collection, the bank's relation to the fund was the same as if the collection had been made from the bank across the street. * * * The funds of Burlington State which came into the hands of the receiver were augmented to the amount of the Griffith check. When the Griffith check was collected, Burlington State held the proceeds precisely as it held the proceeds of the collected draft in the Le Roy Bank case. The proceeds taken from the account of the administrator did not belong to Burlington State or form part of its assets available for distribution among creditors. The receiver, however, got

the benefit of them.'' In accord: *Griffith* v. *Burlington State Bank, supra; Hawaiian Pineapple Company* v. *Browne, supra; State National Bank* v. *First National Bank,* 187 S. W. (Ark.) 673; *Winkler* v. *Veigel,* 223 N. W. (Minn.) 622; *First State Bank* v. *O'Bannon,* 266 Pac. (Okla.) 472; *Gentry County Drain. Dist.* v. *Farmers' & Mechanics' Bank,* 5 S. W. (2nd) (Mo.) 1110; *State* v. *Excello Feed Milling Company, supra.*

It is further contended that even under the trust fund theory the plaintiff was not entitled to a preference because the trust fund cannot be traced into the hands of the receiver. In *Hawaiian Pineapple Company* v. *Browne,* 220 Pac. (Mont.) 1114, 1116, it was said: ''With respect to tracing the fund, the law is that where a trustee mingles his beneficiary's money with his own and then invades the common store, he will be presumed to have used his own money first, because the law presumes a man does right rather than wrong. The sum remaining in the hands of the trustee will be deemed the money of the beneficiary as far as necessary to make up if possible the full amount due him.'' In accord: *First State Bank* v. *O'Bannon,* 266 Pac. (Okla.) 472; *Federal Reserve Bank* v. *Peters,* 123 S. E. (Va.) 379. A trust fund traced to a mingled mass is sufficiently identified. *State* v. *McKinley County Bank,* 252 Pac. (N. M.) 980.

In the instant case it is clear that at the time the amounts represented by the checks were deducted from the accounts of the individual depositors, there was sufficient money in their accounts to pay the respective checks, and second, that from the date the collections were made until the bank became insolvent, there was on hand in the Bank of Mullens and its Roanoke depository sufficient cash to pay the plaintiff's drafts. Therefore, under the trust fund theory, as above described, the plaintiff was entitled to a preference over the general creditors of the Bank of Mullens to the extent of its drafts.

There is another principle which sustains the plaintiff's claim for a preference. Authority and reason support the contention that the drafts drawn in favor of the plaintiff upon the First National Exchange Bank of Roanoke were, under the facts of the instant case, sufficient to constitute an

equitable assignment pro tanto of that specific fund. In *Hulings* v. *Hulings Lumber Company,* 38 W. Va. 351, this Court held that a check operates as an equitable assignment *pro tanto* from the time it is drawn and delivered, as between the drawer and the payee or holder, and that a general assignment for the benefit of creditors does not defeat the check-holder, although the check be not presented to the bank for payment until after such assignment. Has this holding been changed by section 189, chapter 98-A, Code, adopted since the *Hulings* case was decided? Section 189 provides that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check. In Vol. 2, Daniel on Negotiable Instruments, 6th Ed., section 1643, page 1852, it is said: ''The provision of the statute that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, is a declaration of the rule that as against a drawee bank a check is not an assignment of the fund. But as against the drawer, the giving of a check for value on an ordinary bank deposit should be considered as an assignment of the fund *pro tanto.''* In Selover on Negotiable Instruments, (2nd Sd.), section 70, page 116, the author says: ''As between the drawer and the payee or his transferee, it has heretofore been generally held that a check operates as an equitable assignment, and the above rule (sec. 189) of the negotiable instruments law undoubtedly means that, as against the bank, a check does not operate as an equitable assignment.'' This section was designed for the protection of the bank rather than as a provision effecting the relation between the maker of a check and the payee, and as against the drawer, the check should be considered as an equitable assignment *pro tanto.* *Elgin* v. *Gross-Kelly & Co.,* 150 Pac. (N. M.) 922; *First National Bank of Chicago* v. *O'Byrne,* 177 Ill. App. 473, 482; *Farrington* v. *F. E. Fleming Commercial Company,* 94 Neb. 108, 142 N. W. 297; *McClain & Norvet* v. *Torkelson,* 174 N. W. (Iowa) 442, 5 A. L. R. 1665. In *Hove* v. *Stanhope State Bank,* 138 Iowa 39, 115 N. W. 476, in speak-

ing of section 189, the court said: "This section was undoubtedly enacted for the purpose of protecting banks against losses which might be occasioned by the double payment of checks on general deposits, and its only intent and purpose is undoubtedly to protect banks only when they are acting in good faith and without any attempt to assist particular persons in the collection of their debts, to the exclusion of others who are equally entitled to protection." The court then held that in equity the intention to assign makes the check an equitable assignment of the fund and the holder should be protected as against subsequent claimants, notwithstanding the negotiable instruments act. The decision in *McClain & Norvet* v. *Torkelson, supra,* was overruled in the latter Iowa case of *Leach* v. *Mechanics' Savings Bank,* 211 N. W. 506, 50 A. L. R. 388. But in a very strong and persuasive dissent, Albert, J., reaffirms the principles enunciated in the prior decisions of the Iowa Court, and expressed the opinion that as between the drawer of a check or draft, or those standing in his stead, and the payee or holder thereof, a check or draft may constitute an equitable assignment *pro tanto* of the fund upon which it is drawn. A very helpful comment on Judge Albert's dissenting opinion will be found in a note on pages 411 and 412, 50 A. L. R. In *Federal Reserve Bank* v. *Peters,* 123 S. E. (Va.) 379, under a state of facts similar to that existing in the instant case, the court held that while a check drawn by the collecting bank on another bank was not an assignment of the fund against which it was drawn, as between the drawer of the check and the person who gave value for it, it was an equitable assignment of the fund *pro tanto.* A like holding was made in *Federal Reserve Bank* v. *Millspaugh,* 281 S. W. (Mo.) 733. In *State Farmers' Mutual Tornado Insurance Company,* 6 S. W. (2nd) (Mo. App.) 970, it was held that where a bank collecting assessments from policy holders for an insurance company sent a draft to the insurance company for the amount of such collections but the draft was not paid because of the bank's failure, that the draft amounted to an equitable assignment of the insolvent bank's funds in the drawee bank in favor of the insurance

company for the amount of such draft, for which the insurance company was entitled to a preference over the claims of the insolvent bank's general creditors. To a like effect is *Gentry County Drain. Dist.* v. *Farmers' & Mechanics' Bank,* 5 S. W. (2nd) (Mo.) 1110. In *Merchant's National Bank* v. *State Bank,* 214 N. W. (Minn.) 750, the Minnesota Supreme Court held that in view of the statute above referred to, while a check does not of itself operate as an assignment of a fund to the credit of the drawer with the bank upon which the check is drawn, if the drawer intends to appropriate a specific portion of the fund to the payment of the check, an equitable assignment of the fund results, as between the drawer and the payee. See also *Fourth Street Bank* v. *Yardley,* 165 U. S. 634.

Bearing in mind the relationship of the parties, ''the nature of their dealings and the attendant circumstances,'' it is clear in the instant case that the Bank of Mullens intended a portion of its funds on deposit in the First National Exchange Bank of Roanoke should be appropriated to discharge the trust resulting from the proceeds of collection. *Federal Reserve Bank* v. *Peters,* 123 S. E. (Va.) 379, 42 A. L. R. 742; *Griffith* v. *Burlington State Bank,* 277 Pac. (Kans.) 42, 43; *Federal Reserve Bank* v. *Millspaugh,* 281 S. W. (Mo.) 733; *German Savings Institute* v. *Adage,* 8 Fed. 106; *In Re City Bank of Dowagiac,* 186 Fed. 250; *Gentry County Drain. Dist.* v. *Farmers' & Mechanics' Bank,* 5 S. W. (2nd) (Mo.) 1110; *Merchants' National Bank* v. *State Bank,* 214 N. W. (Minn.) 750. Although such an opinion may appear to work a hardship on the general creditors of the insolvent bank, it is in harmony with modern business practices and requirements. As was said in Vol. 2, Morse on Banks and Banking, 6th Ed., section 504, page 1125: ''When a question arises between the holder of a check and the creditors of the drawer under an insolvent assignment subsequent to the check, if the attention is confined to the parties in this one transaction, it may be difficult to see how the holder has a better equity than the creditors. Each has trusted the drawer, each has given value, and why should not each bear his share of the loss? But if the effect upon commercial life of subjecting checks to this

uncertainty be considered, it appears at once that justice to social prosperity requires that the checkholder shall be preferred just as the transferee of a note or bill, or of any other property or representative thereof.''

For the reasons assigned above, we are of the opinion to reverse the decree of the trial court and to award the plaintiff, Federal Reserve Bank of Richmond, a preference over the general creditors of the Bank of Mullens to the extent of the amount now stipulated to be due upon its drafts.

The decree of the lower court will be reversed and the cause remanded to be proceeded with in accordance with the principles decided in this opinion.

*Reversed and remanded.*