In the Matter of JAYNE & MASON, Private Bankers, in Liquidation.

Supreme Court, Monroe County, July 17, 1931.

*Hubbell, Taylor, Goodwin, Nixon & Hargrave [Edward I. Cristy of counsel], for the State Superintendent of Banks.*

*Walter S. Logan,* for the Federal Reserve Bank of New York, in support of claim.

TAYLOR, M. N., J. The claim in question was filed by the Federal Reserve Bank of New York in behalf of various banks, from which it received, for collection, checks drawn on Jayne & Mason. The amount of the claim, as originally filed, was $3,325.44, but it has since been reduced to $2,603.50 by the withdrawal of certain checks at the request of forwarding banks. The facts involved in the claim are as follows:

On July 31, 1930, the Federal Reserve Bank of New York received checks for collection from various banks, drawn on Jayne & Mason of Webster, N. Y., and indorsed and sent such checks by mail to the Webster National Bank, Webster, N. Y., with instructions to present them to Jayne & Mason for payment. On the following day, August 1, 1930, the Webster National Bank received the checks and presented them to Jayne & Mason for payment, and Jayne & Mason thereupon charged the checks to the accounts of the respective makers, the balances in these accounts to the credit of the makers being sufficient to cover the checks, and delivered to the Webster National Bank, in payment of the checks, a draft drawn by Jayne & Mason on the Chase National Bank, New York, N. Y., to the order of the Webster National Bank. On the same date, August 1, 1930, the Webster National Bank indorsed this draft: " Pay to the order of Federal Reserve Bank of New York without recourse. Webster National Bank, Webster, N. Y.," and sent it to the Federal Reserve Bank. On August 2, 1930, and before this draft could be presented, the Jayne & Mason bank was closed by the Superintendent of Banks and the draft was, therefore, dishonored upon presentation. The draft was drawn for the amount of $4,630, as it was in payment not only of the checks included in the claim, but also of other checks which, at the request of forwarding banks, have not been included in the claim. Independent claims for the items so withdrawn from the claim of the Federal Reserve Bank have been filed by the various drawers of these items.

After the draft, drawn by Jayne & Mason upon the Chase National Bank, had been dishonored on August 4, 1930, the Federal Reserve Bank charged the items back to the accounts of the respective

banks from which these items had been received, but did not cause any of these items to be protested and did not demand or attempt to obtain the return of any of these items. These facts give rise to a preferred claim under the express provisions of subdivision 2 of section 350-1 of the Negotiable Instruments Law of New York (as added by Laws of 1929, chap. 589), which provides as follows:

" 2. Except in cases where an item or items is treated as dishonored by nonpayment as provided in section three hundred and fifty-j, when a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for business as above, after having charged such item or items to the account of the maker or drawer thereof or otherwise, discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books or any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debtor therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof, or for the balance payable upon a number of items which have been exchanged, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."

Whether facts, such as those involved in this claim, gave rise to a preferred claim, in the absence of any statute, seems to have been the subject of conflict in judicial decisions. Among the cases in which preferences have been allowed, in the absence of a statute, are the following: *Federal Reserve Bank* v. *Peters* (139 Va. 45); *Federal Reserve Bank* v. *Bohannan* (141 id. 285); *Federal Reserve Bank* v. *Millspaugh* (314 Mo. 1); *Rainwater* v. *Federal Reserve Bank* (172 Ark. 631); *Atlantic National Bank* v. *Pratt* (95 Fla. 822); *Central Trust Co.* v. *Bank of Mullens* (108 W. Va. 12); *Winkler* v. *Veigel* (176 Minn. 384). The cases to the contrary include the following: *Lippitt* v. *Thames Loan & Trust Co.* (88 Conn. 185); *Leach* v. *Mechanics Savings Bank* (202 Iowa, 899); *Larrabee Mills* v. *First National Bank* (13 F. [2d] 330; certiorari denied, 273 U. S. 727); *Steele Briggs Seed Co.* v. *Spurway* (28 F. [2d] 42).

The evident purpose of said section 350-1 was to establish the rule of law in accordance with the line of decisions allowing preferences under circumstances such as are involved in this claim and

" irrespective of whether the fund representing such item or items, can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."

On the hearing the court was asked to consider whether the charging back of checks, by the Federal Reserve Bank against the forwarding banks, did not constitute an election to treat the items as dishonored by non-payment, pursuant to section 350-j of the Negotiable Instruments Law (as added by Laws of 1929, chap. 589), so as to bring the case within the exception referred to in the first clause of subdivision 2 of section 350-l of said law.

So much of section 350-j of the Negotiable Instruments Law as is pertinent to the facts involved here, provides as follows:

" § 350-j. Election to treat as dishonored items presented by mail. Where an item is duly presented by mail to the drawee or payor, whether or not the same has been charged to the account of the maker or drawer thereof or returned to such maker or drawer, the agent collecting bank so presenting may, at its election, exercised with reasonable diligence, treat such item as dishonored by nonpayment and recourse may be had upon prior parties thereto in any of the following cases:

" (1) Where the check or draft of the drawee or payor bank upon another bank received in payment therefor shall not be paid in due course."

Upon consideration of this question, the court is of the opinion that it does not constitute such an election. Section 350-a of the Negotiable Instruments Law (as added by Laws of 1929, chap. 589) provides that any credit given by a depositor or collecting bank " shall be revocable until such time as the proceeds are received in actual money or an unconditional credit given on the books of another bank," which such depository or collecting bank has requested or accepted. The check collection circulars of all Federal Reserve banks have, since at least 1923, contained provisions authorizing such banks to charge back to a forwarding bank the amount of any check for which payment in actually and finally collected funds has not been received, and all collecting banks have had this right either by express agreement with their customers or by reason of the established banking usage. Such right of the Federal Reserve Bank, to charge back the items included in the draft on the Chase National Bank to its forwarding banks, was a matter of agreement between it and the forwarding banks, and neither the terms of the agreements between said banks, nor the acts performed pursuant to such agreements, determine or affect the rights of the parties to the items which the forwarding banks

sent to the Federal Reserve Bank for collection. In this transaction, while the Federal Reserve Bank charged the items back to the accounts of the respective banks from which these items had been received, it did not have any of the items protested and did not demand or attempt to obtain the return of any of the items and the charging back was done without any notice to the Jayne & Mason Bank. Such circumstances do not constitute the exercise of the election to treat the items as dishonored, within the contemplation of section 350-j.

The makers have already paid the checks by the charges to their accounts and it cannot be claimed that the checks have been dishonored, which would mean that the makers could now be required to pay the checks a second time. When the drawee bank charges a check to the maker's account and issues its draft therefor, this constitutes payment of the check and reduces the drawee bank's obligation to the maker (depositor) by the amount of the check and discharges the liability of the maker and indorsers on the check. (*Consolidated National Bank of New York* v. *First National Bank of Middletown*, 129 App. Div. 538; affd., without opinion, 199 N. Y. 516.)

I conclude that the Superintendent of Banks should pay the claim of the Federal Reserve Bank in full.

Order signed.