In the Matter of E. C. BREWER COMPANY, Private Bankers (CHARLES R. BREWER, ISABEL P. BREWER and WILLIAM HANKEY), in Liquidation.

Supreme Court, Otsego County, July 19, 1932.

*Lee, Levene, Verreau & McAvoy [David Levene* of counsel], for the State Superintendent of Banks.

*Jenkins, Deyo & Hitchcock [Israel T. Deyo* of counsel] and *Walter S. Logan,* for the Federal Reserve Bank of New York.

McNAUGHT, J. The claim in question is filed by the Federal Reserve Bank in behalf of its various correspondents. The Federal Reserve Bank received for collection checks drawn on E. C. Brewer Company. It sent such checks for collection and remittance on December 29, 1931. The items were received by the Brewer Company, the accounts of the drawers or makers charged with the amount of the checks and the Brewer Company drew and forwarded its draft in payment of such items. The following day, before the draft was presented for payment, the Superintendent of Banks took possession of E. C. Brewer Company for the purpose of liquidation, consequently the draft was dishonored.

The sole question presented upon this application is whether or not the Federal Reserve Bank is entitled to priority of payment as a preferred claim for the items included in such claim which were not elected to be treated as dishonored.

Prior to the enactment of article 19-A, added to the Negotiable Instruments Law by chapter 589 of the Laws of 1929, and in effect April 12, 1929, decisions upon the question of whether the forwarding bank was entitled to preferential payments where the collecting bank failed or closed after having charged such item or items to the account of the makers or drawers, but without its remittance therefor having been paid, were in a state of hopeless confusion. The decisions of various jurisdictions throughout the United States were diametrically opposed to each other. In some jurisdictions it was held under such a state of facts the relationship was that of debtor and creditor only. Such was the rule in New York and Massachusetts. In other jurisdictions it was held the relationship created was that of principal and agent and in some that a trust relationship was created and the owner or holder of the collected items was entitled to a preference or to recovery of the proceeds as a trust fund.

The rule in the State of New York was enunciated in *People* v. *Merchants & Mechanics' Bank* (78 N. Y. 269), holding specifically that under such a state of facts there was no special trust imposed

and that the transaction simply reduced the indebtedness of the drawee to its depositor and constituted the drawee a debtor to the forwarder of the items. This was followed with approval in several cases, being cited upon such point as late as *Baldwin's Bank* v. *Smith* (215 N. Y. 76, 85). It was likewise so held in *Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co.* (242 Mass. 181). A similar rule has been followed in other jurisdictions, typical cases being *Shull* v. *Beasley* (149 Okla. 106); *Matter of South Carolina Loan & T. Co.* (150 S. C. 25); *Leach* v. *Citizens' State Bank* (203 Iowa, 782); *Larrabee Mills* v. *First National Bank* (13 F. [2d] 330).

A contrary rule was held in numerous cases, a preference being allowed in the absence of statute, a few illustrative cases being *Bauck* v. *First State Bank* (178 Minn. 64); *Rainwater* v. *Federal Reserve Bank* (172 Ark. 631); *State ex rel. Sorensen* v. *Nebraska State Bank* (120 Neb. 539); *Federal Reserve Bank* v. *Millspaugh* (314 Mo. 1).

It is manifest that prior to the enactment of article 19-A of the Negotiable Instruments Law, the question here presented would not have been debatable in the State of New York. By that article, however, subdivision 2 of section 350-1 provided for exactly the condition which exists in this proceeding. It provided that "* * * when a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for business as above, after having charged such item or items to the account of the maker or drawer thereof or otherwise, discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor * * * the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof, * * * and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."

The effect of this enactment was to change the rule which had heretofore existed in this State. The article is commonly known as the Bank Collection Code. It is one of the uniform laws and has now been adopted in a number of the States. Its purpose was to provide a uniform system for bank collections and to make uniform rules in all the jurisdictions adopting the statute. It adopted the principle enunciated in those cases holding that under

such circumstances a trust resulted in favor of the owners of such items.

The statute specifically and clearly declares that the assets of the drawee shall be impressed with a trust for the amount of such items and that as a result of such trust being so impressed upon such assets, the owner shall be entitled to payment of a preferred claim from the assets. It is difficult to conceive of a trust impressed upon assets for the benefit of a *cestui que trust* (in this case the owners of the items), and vesting in such *cestui que trust* the right to a preferred claim upon the assets, and yet hold that such claim is not entitled under such a provision to payment in full. The State Superintendent of Banks, however, in the extremely able and exhaustive oral argument and brief submitted by his counsel, vigorously contends that under the provisions of section 156 of the Banking Law (as amd. by Laws of 1930, chap. 679) the depositors are entitled to preferential payment and bases the argument upon the fact that it is conceded that all of the assets owned by E. C. Brewer Company when the Superintendent of Banks took possession of its business and property for the purpose of liquidation, were derived from the investment of such deposits or from the investing of permanent capital segregated and set aside for employment in their business as private bankers. He contends, therefore, that the claims of persons for moneys on deposit are preferred under such circumstances to any other claim. The argument seems to us untenable. It is logical and seems reasonable, but it must be borne in mind that article 19-A of the Negotiable Instruments Law and the provisions of subdivision 2 of section 350-l were adopted in 1929 and in so far as they may conflict, if they do conflict, with the provisions of section 156 of the Banking Law, in the event the two cannot be reconciled, the provisions of section 350-l must prevail. It appears, however, that when article 19-A was adopted it was provided by section 350 that " The term ' bank ' shall include any person, firm or corporation engaged in the business of receiving and paying deposits of money within this State." Manifestly, therefore, all of the provisions of article 19-A of the Negotiable Instruments Law relating to bank collections are specifically made applicable to private bankers. The fact that section 156 of the Banking Law is found in article IV of such law, relating to private bankers, is not of vital consequence, because the Legislature has clearly indicated its intention to make all of the provisions of article 19-A applicable to all banks, whether incorporated banks or private bankers.

The only reported case in this State since the enactment of article

19-A of the Negotiable Instruments Law is *Matter of Jayne & Mason* (140 Misc. 822), in which a similar claim was presented to the State Superintendent of Banks in charge of the liquidation of Jayne & Mason, private bankers, and the court there allowed the claim and directed its payment in full, holding that the facts gave rise to a preferred claim under the express provisions of subdivision 2 of section 350-1 and entitled the claimant to payment in full.

The question was not raised, and the court did not discuss the effect of section 156 of the Banking Law, but for the reasons we have briefly stated it seems to us that that section does not preclude the allowance of the claim of the Federal Reserve Bank in this case.

The position of counsel for the State Superintendent of Banks is to the effect that no trust against the assets of the Brewer Bank can exist because a debtor and creditor relationship was created when the items were charged against the drawers' accounts and the draft of the Brewer Company forwarded to the Federal Reserve Bank. If the statute had not been enacted this would undoubtedly have been true in New York, but the statute provides for the exact condition which here exists. It specifically provides that if, after the items have been received and have been charged, the drawee bank fails or closes for business without its obligation to the forwarding bank being settled and discharged, that then the assets of the drawee or payor bank are impressed with a trust. There is considerable force in the contention that the claim of the Federal Reserve Bank to a preference should be restricted to payment on a parity with the preferred claims of depositors under section 156 of the Banking Law, but if under the statute a trust is created and if all of the assets are impressed with that trust to the extent of the items included in the claim of the Federal Reserve Bank, how can the *cestui que trust*, the beneficial owners of the items represented by the claim, be deprived of some part of the trust fund? True, it may not be a segregated fund; it may not have been set apart in any direct way; it may even be said that it is more or less of a bookkeeping transaction; nevertheless the Brewer Company received the items from the owners; it decreased its responsibility and liability to the makers by charging the amounts of the items against their various accounts and took the aggregate of these items and included them in a draft. That draft represents the moneys due to the persons who own such items and as to whom under the statute as it now exists a fiduciary relation was created. Because of that relationship the statute has provided that all of the assets of the drawee, the collecting bank, shall be impressed with a trust.

The purpose, the plain intent, the clear and unmistakable meaning of the provision is that such preferred claim shall be paid in full, the statute adopting the reasoning and the conclusions of the various cases in the several jurisdictions holding that a trust was created under such circumstances and the claimant entitled to payment in full. (Cases cited, *supra.*)

The claim of the Federal Reserve Bank and the two similar items should be paid in full.

The claim of the State Superintendent of Banks under the provisions of section 32 of the Banking Law (as amd. by Laws of 1930, chap. 678), for eighty-one dollars and eighteen cents is entitled to payment equal in priority with the priorities given by section 156 of the Banking Law.

Submit order accordingly.