FRANCISCO FANO, ACTING TREASURER OF PUERTO RICO, Plaintiff, v. BANCO TERRITORIAL Y AGRÍCOLA DE PUERTO RICO, Defendant, and BANCO DE PUERTO RICO, RECEIVER, ETC., Defendant and Appellant; ROYAL BANK OF CANADA, Intervener and Appellee.

No. 6949. Argued May 4, 1937.—Decided May 31, 1938.

*José Ramírez Santibáñez* and *Rafael Ramírez Santibáñez* (*Salvador Suau Carbonell* on the brief) for appellant. *Brown, González & Newsom* for intervener and appellee. *B. Fernández García, Attorney General,* and *E. de Aldrey, Assistant Attorney General,* for plaintiff.

MR. JUSTICE WOLF delivered the opinion of the court.

In a suit of Francisco Fano, Acting Treasurer of Puerto Rico, against the Banco Territorial & Agrícola, the Bank of Puerto Rico was appointed administrator or receiver for the said Banco Territorial & Agrícola. The terms have been used interchangeably by the court below. The record before us does not disclose the nature of the proceeding begun by the Acting Treasurer or why the bank was placed in receivership. Other facts that might have some bearing on the case are not disclosed, as, for example, the date of the appointment of the receiver and the dates of the collection of the various bills of exchange or checks that were recovered by the Banco Territorial & Agrícola as agent of the Royal Bank of Canada.

The Royal Bank of Canada turned over for collection to the Banco. Territorial & Agrícola various bills of exchange

or checks. This is true, but what happened literally was that the Royal Bank of Canada turned over bills of exchange or checks to be recovered by the branch of the Banco Territorial & Agrícola in Manatí and other bills of exchange to the branch of the same bank in Guayama. Likewise, the Royal Bank of Canada turned over one or more other checks directly to the Banco Territorial & Agrícola in San Juan, but when and how these collections were turned over to the Banco Territorial & Agrícola in San Juan does not appear from the record. The probability is that these checks were recovered from other parts of the Island.

The branch bank at Manatí and the branch bank at Guayama collected these specific bills of exchange and in turn each of them issued its own checks on the central branch or the Banco Territorial & Agrícola at San Juan. When these checks were presented for payment to the Banco Territorial & Agrícola in San Juan, payment was refused on the ground that these funds as collected had been mixed with the general funds of the Banco Territorial & Agrícola and were indistinguishable from the other funds in possession of the Bank of Puerto Rico, the receiver.

Subsequently, the Royal Bank of Canada filed a petition asking leave to intervene in the above described suit. The intervention was granted. The complaint in intervention was filed and then there was a so-called opposition filed by the receiver.

The case was submitted to the District Court of San Juan on these two pleadings, as they may be called. The district court rendered judgment in favor of the intervener and ordered the Banco de Puerto Rico, in its character as judicial administrator, to proceed to pay the said intervener the sum of $603.89 of the funds which said receiver had in his power as belonging to the bank under administration. No date was fixed for the payment. The receiver has appealed.

In its opinion the district court sets forth the various amounts turned over and collected, with specifications of the actual commercial paper remitted, as amounting:

To the Manatí branch, checks and bills of exchange collected by same and paid by the Manager of said branch by a check against the San Juan central office_____ $1, 340. 46

To the Guayama branch, checks and bills of exchange collected by same and paid by the Manager of said branch by a check against the San Juan central office_____ 240. 76

To the San Juan central office, two checks collected by same and paid by Manager's check in the sum of_____ 22. 67

Total_____ $1, 603. 89

The theory of the court was that the amounts of the commercial paper so recovered partook of the nature of a trust fund or of a special deposit.

The assignments of error are as follows:

"1. The lower court erred in holding that the amounts claimed by the intervener, Royal Bank of Canada, have a preference because they proceed from a trust fund in the nature of a special deposit.

"2. The court erred in finding, erroneously, that when the receiver for the Banco Territorial & Agrícola was appointed, he received more than $1,063.89 in cash, which is the amount claimed, and on that basis granting a preference as to the above amount against the receivership and ordering its immediate payment from the funds belonging to the bank under administration.

"3. The court committed error in ordering the immediate payment of the preferred claim in its entirety, without prorating its payment with the other preferential and preexisting claims against the receivership."

In most of the earlier decisions on the relation between a transmitting bank and a collecting bank, the courts had a strong tendency to say, that a relation of principal and agent exists until the collection is made and thereafter the collecting bank becomes the debtor of the remitting bank. From the fact of agency or its continuance the courts were accustomed to hold that a trust fund was created in favor of the remitting bank.

More recently the decisions of the courts to a certain extent have changed and they are more ready to say, under the circumstances, that a trust relation in favor of the remitting bank arises. *Re Jayne,* 140 Misc. 822, 251 N.Y. Supp. 768; *Central Trust Co.* v. *Bank of Mullens,* 108 W. Va. 12, 150 S.E. 137 (taken from note in 77 A.L.R. 474); *Miami* v. *First Nat. Bank,* 58 Fed. (2) 561, 289 U.S. 707; In point *People* v. *Bank of Dansville,* 39 Hun. (N.Y.) 187, followed in *Baldwin's Bank* v. *Smith,* 215 N. Y. 76, 109 N.E. 138 (taken from note in 90 A.L.R. 15); *Treasurer* v. *Banco Comercial,* 46 P.R.R. 298, and others analyzed in the brief of the appellee.

Some of this history is traced in our own opinion in the case of *Treasurer* v. *Banco Comercial, supra.* This was a decision by a divided court, but the principal difference was whether the deposit discussed therein was general or special. There was no doubt that a special deposit created a trust fund.

Throughout the decisions a most important element is the intention of the parties establishing the relation. For example, there is no question that if the remitting bank has a deposit or an account with the collecting bank and there is no instruction to send the funds immediately to the remitting bank, the status of creditor and debtor arises. It is clear on the other hand, that when the remitting bank asks that* the fund be immediately transmitted to it, a trust relation ensues. The court below found or held, as the case may be, that as no instructions of any kind appeared, the money collected by the Banco Territorial & Agrícola was a special fund and hence a trust relation, and support for this position can be found in the decisions, *supra.*

█ There has been some discussion in the briefs about the funds, the mixture thereof with the general funds of the central bank in San Juan, and the sufficiency of the funds. The record is silent as to when the funds collected by the branch banks reached San Juan. We do not know whether the actual money collected ever left the branch at Manatí

or the branch bank at Guayama. The record does not even disclose the date at which the receiver took possession of the funds. Although we are inclined to agree with the court below, without any further special reason, we think that the burden was on the appellant to show that the moneys collected by the branch banks of Manatí and Guayama lost their specific character or were mixed with any other funds.

In the *Manrique* case and others, it would appear that most times, as a necessary evolution in the relation of debtor and creditor that the bank stands to its customer, there is practically always a deposit. Of course, this so-called deposit is not the classical bailment, for the exact thing deposited need not be returned. An equivalent is always sufficient. An element of bailment or deposit, however, is there.

Section 1658 of the Civil Code (1930 ed.) says:

"A depositum is constituted from the time a person receives a thing belonging to another with the obligation of keeping and returning it."

In the case at bar, it may be said, no deposit or bailment arose or was shown. No deposit in the classic sense arose because there was no duty at all to safekeep in its coffers the money received by the collecting bank. The collecting bank was bound to turn over the proceeds to the remitting bank and unless a custom to the contrary was shown, the relation of debtor and creditor could not, under the facts, arise. In any event, given the nexus of the parties, the burden was on the receiver in this case, we hold, to make it appear that the only claim of the appellee was as a creditor.

The order appealed from should be affirmed.