FRANCISCO FANO, TESORERO INTERINO DE PUERTO RICO, demandante, *v.* BANCO TERRITORIAL Y AGRÍCOLA DE PUERTO RICO, demandado; BANCO DE PUERTO RICO, Síndico Interino del

Banco Territorial y Agrícola de Puerto Rico, demandado y apelante y Royal Bank of Canada, interventor y apelado.

Núm. 6949.—*Sometido:* Mayo 4, 1937. *Resuelto:* Mayo 31, 1938.

*José Ramírez Santibáñez* y *Rafael Ramírez Santibáñez* (*Salvador Suau Carbonell,* en el alegato), abogados del apelante; *Brown, González & Newsom,* abogados del interventor apelado; *Hon. Procurador General B. Fernández García* y *E. de Aldrey, Procurador General Auxiliar,* abogados del demandante.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

En un pleito instruído por Francisco Fano, Tesorero Interino de Puerto Rico, contra el Banco Territorial y Agrícola, el Banco de Puerto Rico fué nombrado administrador o síndico del referido Banco Territorial y Agrícola. Los términos han sido usados indistintamente por la corte inferior. Los autos que están ante nos no revelan la naturaleza del procedimiento iniciado por el Tesorero Interino ni por qué el banco

fué puesto bajo sindicatura. Otros hechos que pueden tener alguna relación con el caso tampoco aparecen, como por ejemplo, la fecha de la designación del síndico y las fechas en que se cobraron las varias letras de cambio o cheques cobrados por el Banco Territorial y Agrícola, como agente del Royal Bank of Canada.

El Royal Bank of Canada entregó para su cobro al Banco Territorial y Agrícola varias letras de cambio o cheques. Esto es cierto, mas lo que sucedió literalmente fué que el Royal Bank of Canada entregó letras de cambio o cheques para ser cobrados por la sucursal del Banco Territorial y Agrícola de Manatí y otros giros a la sucursal del mismo banco en Guayama. De igual modo, el Royal Bank of Canada entregó uno o más cheques directamente al Banco Territorial y Agrícola en San Juan, mas cuándo y cómo estas cobranzas fueron entregadas al Banco Territorial y Agrícola en San Juan, no aparece de los autos. La probabilidad es que estos cheques fueran cobrados por otras sucursales de la Isla.

La sucursal del banco en Manatí y la sucursal de Guayama cobraron estos giros específicos y en cambio cada una de ellas libró sus propios cheques contra la oficina matriz, o sea contra el Banco Territorial y Agrícola de San Juan. Cuando se presentaron estos cheques para su pago al Banco Territorial y Agrícola de San Juan, se negó su pago basándose en que los fondos cobrados habían sido mezclados con los fondos generales del Banco Territorial y Agrícola y que no era posible distinguirlos de los otros fondos en poder del Banco de Puerto Rico, síndico.

Posteriormente el Royal Bank of Canada radicó una petición solicitando permiso para intervenir en el pleito arriba descrito. Se autorizó la intervención. La demanda de intervención fué radicada y entonces el síndico presentó una llamada oposición.

El caso fué sometido a la Corte de Distrito de San Juan a base de estas dos alegaciones, según puede llamárseles. La corte de distrito dictó sentencia a favor del interventor y

ordenó al Banco de Puerto Rico, en su carácter de administrador judicial, que procediera a pagar a dicho interventor la suma de $1,603.89 de los fondos que dicho síndico tenía en su poder como pertenecientes al banco que estaba bajo administración. No se fijó fecha alguna para el pago. El síndico ha apelado.

En su opinión la corte de distrito hace constar las varias sumas entregadas y cobradas, especificando el documento mercantil remitido, ascendentes a:

A la sucursal de Manatí, cheques y giros cobrados por ésta y pagados por su Gerente mediante cheque contra el Banco central en San Juan_____ $1,340.46

A la sucursal de Guayama, cheques y giros cobrados por ésta y pagados por su Gerente mediante cheque contra el Banco central en San Juan_____ 240.76

Al Banco central de San Juan, dos cheques cobrados por éste y pagados mediante cheque del Gerente por la suma de_____ 22.67

Total_____ $1,603.89

La teoría de la corte fué que los importes de los documentos mercantiles así cobrados participaban de la naturaleza de un fideicomiso (*trust fund*) o de un depósito especial.

Los señalamientos de error son como sigue:

"1. La acorte inferior erró al declarar que las sumas reclamadas por la interventora Royal Bank of Canada gozan de preferencia porque proceden de un *trust fund* con el carácter de depósito especial.

"2. La corte erró al apreciar indebidamente que al decretarse la sindicatura del Banco Territorial y Agrícola el síndico recibió dinero efectivo en exceso de la suma de $1063.98, que es el montante reclamado, como base para declarar el cobro preferente de dicha suma contra la sindicatura y ordenar el pago inmediato de la misma de los fondos pertenecientes al banco en administración.

"3. La corte cometió error al ordenar el pago inmediato de la reclamación preferente en su totalidad, sin establecer el prorrateo de pago con las otras reclamaciones preferentes y preexistentes de la sindicatura."

■■ En la mayoría de las decisiones más antiguas sobre la relación existente entre un banco trasmitente y un banco cobrador, las cortes tuvieron la fuerte tendencia, para así decirlo, de que existe la relación de mandante y mandatario hasta que se efectúa el cobro y que luego el banco cobrador se convierte en deudor del banco trasmitente. Del hecho de la agencia o de su continuación las cortes se acostumbraron a resolver que se creaba un fondo de fideicomiso en favor del banco trasmitente.

Más recientemente las decisiones de las cortes hasta cierto punto han cambiado y están más dispuestas a decir, bajo las circunstancias, que surge una relación de fideicomiso en favor del banco trasmitente. *Re Jayne* v. *Mason,* 140 Misc. 822, 251 N.Y. Supp. 768; *Central Trust Co.* v. *Bank of Mullens,* 108 W. Va. 12, 150 S.E. 137 (tomado de la nota que aparece en 77 A.L.R. 474); *Miami* v. *First Nat. Bank,* 58 F. (2d) 561, 289 U.S. 707; Aplicable—*People* v. *Bank of Dansville,* 39 Hun. (N.Y.) 187, seguido en *Baldwin's Bank* v. *Smith,* 215 N.Y. 76, 109 N.E. 138 (tomado de la nota que aparece en 90 A.L.R. 15); *Tesorero* v. *Banco Comercial y Manrique,* 46 D.P.R. 308, y otros analizados en el alegato del apelado.

Parte de la relación que antecede ha sido reseñada en la opinión emitida por este tribunal en el caso de *Tesorero de Puerto Rico* v. *Banco y Manrique,* supra. Ésa fué una decisión de una corte dividida, mas la diferencia principal allí existente fué si el depósito discutido en dicho caso era uno general o especial. No hubo duda de que un depósito especial creaba un fondo de fideicomiso.

A través de todas las decisiones el elemento más importante es la intención de las partes que establecen la relación. Por ejemplo, no hay duda de que si el banco trasmitente tiene un depósito o una cuenta con el banco cobrador y no existen instrucciones de que se remitan los fondos inmediatamente al banco trasmitente, surge la relación de acreedor y deudor. Por otra parte, es claro que cuando el banco trasmitente pide que los fondos le sean inmediatamente remitidos, surge una

relación de fideicomiso. La corte inferior halló o resolvió, según sea el caso, que como no se desprendían instrucciones de clase alguna, el dinero cobrado por el Banco Territorial y Agrícola era un fondo especial y por tanto que existía una relación de fideicomiso, y puede hallarse apoyo para esta posición en las decisiones que anteceden.

En los alegatos se ha discutido algo acerca de los fondos, el haberse mezclado los mismos en los fondos generales del banco central en San Juan, y la suficiencia de los mismos. Los autos guardan silencio respecto a cuándo los fondos cobrados por las sucursales llegaron a San Juan. No sabemos si el dinero cobrado jamás salió de las sucursales de Manatí o Guayama. De los autos no se desprende siquiera la fecha en que el síndico tomó posesión de los fondos. Aunque nos inclinamos a convenir con la corte inferior, sin razón especial ulterior, creemos que incumbía al apelante demostrar que el dinero cobrado por las sucursales de Manatí y Guayama perdió su naturaleza específica o se mezcló con otros fondos.

Se desprende que en el caso de *Manrique* y otros, la mayoría de las veces, como evolución necesaria en la relación de deudor y acreedor que existe entre el banco y su cliente, prácticamente existe siempre un depósito. Desde luego, este llamado depósito no es el depósito clásico, toda vez que no es menester devolver la misma cosa depositada. Basta siempre devolver su equivalente. Sin embargo, existe un elemento del depósito.

El artículo 1658 del Código Civil (edición 1930) provee:

"Se constituye el depósito desde que uno recibe la cosa ajena con la obligación de guardarla y de restituirla."

En el presente caso podría decirse que no surgió ni se demostró depósito alguno. No surgió depósito alguno en el sentido clásico de la palabra porque no existía en absoluto el deber de guardar en sus arcas el dinero recibido por el banco que lo cobró. Éste estaba obligado a entregar el producto de la suma cobrada al banco trasmitente y, a menos que

se demostrara una costumbre contraria, no podía surgir, bajo estos hechos, la relación de deudor y acreedor. Sea ello como fuere, dado el nexo jurídico existente entre las partes, resol-vemos que incumbía al síndico en este caso demostrar que la única reclamación que tenía el apelado era en su calidad de acreedor.

*La resolución apelada debe ser confirmada.*