The People of the State of Illinois, Upon the Relation of and in the Name of Oscar Nelson, Auditor of Public Accounts of the State of Illinois, v. American Trust & Savings Bank of Kankakee, County of Kankakee and State of Illinois.

Intervening Petition of Alphonsine Denoyer to Have her Judgment Allowed as a Preferred Claim, Appellee, v. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, and Fred G. Snow, Receiver of American Trust & Savings Bank of Kankakee, Appellants.

Gen. No. 8,328.

Opinion filed September 10, 1931.

Oscar E. Carlstrom, Attorney General, and Eben B. Gower, for appellants.

Vernon G. Butz, Irwin C. Taylor and Chas. D. Henry, Jr., for appellee.

Mr. Justice Jett delivered the opinion of the court.

The record discloses that the American Trust and Savings Bank of Kankakee, Illinois, was taken charge of and closed by Oscar Nelson, auditor of public accounts of the State of Illinois. The American Trust and Savings Bank was the successor of the Legris Trust and Savings Bank. Subsequent to the taking charge of the said American Trust and Savings Bank by the auditor of public accounts, one Fred G. Snow was appointed receiver thereof.

It appears that Alphonsine Denoyer was a depositor in the Legris Trust and Savings Bank and on the 3rd day of April, 1924, she went to Fred E. Legris, Jr., the cashier, and told him she desired to buy some notes secured by a first mortgage. Legris replied that he had what she desired and sold her three $1,000 notes bearing interest at the rate of 6½ per cent per annum. The amount paid by her for the three notes included interest and totaled the sum of $3,045. She received the interest for a number of years and finally the said American Trust and Savings Bank of Kankakee closed its doors as hereinabove indicated. She had not received the interest for the year in which the bank was closed and she consulted with the attorney for the bank who informed her that the notes she possessed were not secured by a first mortgage but were secured by a second mortgage. Thereupon she brought an action in the circuit court of Kankakee county in which she charged fraud and deceit. A trial was had and she recovered a judgment against the bank for $3,200. The American Trust and Savings Bank had resources amounting to $729,915.48 on December 29, 1929, according to its books as set forth in the decree appointing the receiver.

The record further discloses that on September 27, 1930, an intervening petition was filed by Alphonsine Denoyer against the American Trust and Savings

Bank of Kankakee. In her intervening petition the said Alphonsine Denoyer prayed that her claim be held to be a preferred one and paid before the claims of general creditors. At the hearing on her petition she introduced the judgment she had obtained for $3,200, the files and the oral testimony, all for the purpose of showing that her claim was founded on fraud and deceit and to further show that as a result thereof a trust arose in her favor. The court found in favor of the intervenor and gave her claim a preference, and this appeal followed.

The question arising on this record is whether or not under the showing made the court erred in allowing the claim of the intervening petitioner as a preferred one and ordering it paid before the general creditors were paid. The intervenor was bound to establish that her claim was founded on fraud and deceit and to show as a result thereof, a trust arose in her favor. She had a right to do so by the introduction of oral testimony or by introduction of the record and the pleadings in the case in which she recovered a judgment at law, or by both, by oral testimony and by documentary evidence.

It is urged that the court committed error in the admission of the judgment obtained in the suit at law against the bank together with files in said cause. The declaration in the suit at law averred that the intervenor paid the bank $3,045 for notes represented by the bank to be secured by first mortgage on real estate which security was good; that the intervenor relied upon the statements and was deceived; that the statement was false, that the notes were secured not by a first mortgage but a second mortgage and were worthless. We can see no good reason why such evidence should not have been heard by the court, wherein it was incumbent upon the intervenor to establish the fact that fraud and deceit had been practiced upon

her. This evidence was not conclusive within itself but the declaration and averments thereof, together with the judgment, were proper to be taken into consideration by the court in determining the issues involved. It is conceded by the appellant that the documentary evidence offered, if it was admissible, tended to prove the contention of the intervenor. The testimony of the intervenor herself sustains the allegations of the petition. It shows that the petitioner had the money in the bank before she purchased the notes from the bank. It shows and stands in the record uncontradicted that when she went to the representative of the bank and mentioned the fact that she desired to purchase notes secured by first mortgages she was informed that the bank had such paper as she desired and that it was secured by a first mortgage; that she relied upon the statement of the cashier of the bank and that the notes were not as represented; that instead of being secured by a first mortgage they were secured by a second mortgage and the second mortgage security was worthless; that the property was not worth more than the indebtedness secured by the first mortgage and that the first mortgage was in process of foreclosure. If these facts be true, then was it not proper for the court to hear them in order that it might determine whether or not fraud and deceit had been practiced upon the intervenor? We think such testimony was admissible.

It is also conceded by the appellant that if the testimony of the intervenor is admissible it sustains the allegations of her petition. If the intervenor had not obtained a judgment against the bank, and had filed her claim basing it on the notes, she would have been a competent witness to testify in her own behalf. Her evidence established the facts set up in her petition. The fact that a judgment was entered on the notes does not preclude the petitioner from establishing by oral testimony the fraud and deceit.

A judgment in assumpsit does not waive the facts upon which it is obtained. In *Nelson v. Petterson,* 229 Ill. 240, at 247, it is said: ''We are of the opinion that if, as contended by plaintiff, the fraudulent representations and concealments of defendant alleged in the declaration created a liability from which the law implied a promise to pay, so that *indebitatus assumpsit* would lie, still the liability results from a tort and not a contract. If the tort might be waived and an action of assumpsit maintained, still the very foundation of the action is the tort, and it is only by a fiction of law that a promise to pay is said to be implied.''

Fraud and deceit by a bank, whereby the bank obtains money of a customer, creates a trust in favor of the customer.

A constructive trust is held to be where one clothed with some fiduciary character, by fraud or otherwise, gains something for himself which equity will fasten upon his conscience, converting him into trustee of legal title. To raise a constructive trust there must have been some element of fraud at the time of the transaction, or a confidential relation and influence whereby one obtained legal title to property which he ought not, according to the rules of equity and in good conscience, to hold and enjoy. *Streeter v. Gamble,* 298 Ill. 332.

The argument of the appellant is to the effect that although the fund in question is impressed with a trust that this will avail the petitioner nothing, because the fund was so mixed with other funds in the bank's possession as to lose its identity, and in fact was dissipated by the bank, therefore, the petitioner stands merely as a creditor.

In Storey on Equity Jurisprudence, Vol. 2, sec. 1258, the rule is thus stated:

''The general proposition which is maintained both at law and in equity upon this subject is, that if any property in its original state and form is covered

with a trust in favor of the principal, no change of that state and form can divest it of such trust or give the agent or trustee converting it, or those who represent him in right (not being bona fide purchasers for a valuable consideration without notice) any more valid claim in respect to it than they respectively had before such change. An abuse of a trust can confer no rights on the party abusing it or on those who claim in privity with him. This principle is fully recognized at law, in all cases where it is susceptible of being brought out, as a ground of action or of defense in a suit at law. In courts of equity it is adopted with a universality of application.''

In *People v. Auburn State Bank,* 215 Ill. App. 133, at 137, the court, after quoting from Storey on Equity Jurisprudence, says:

"This rule is supported by citations; also supporting it are *White v. Sherman,* 168 Ill. 589, and *Breit v. Yeaton,* 101 Ill. 242; 2 Perry on Trusts, secs. 835–36, and, conspicuously, the case of *Woodhouse v. Crandall,* 197 Ill. 104. In the last-mentioned case the court distinguishes most of the decisions which are now presented by the bank in support of its contention. It was there held that in such cases it is not necessary that the money or bank bills should be identified; that the suit is not to recover a specific thing but a certain sum of money held in trust, and that it is the identity of the fund and not the identity of the money which is to be established; that it makes no difference if the fund was mingled with other moneys so as to lose its identity as currency; that the character of the fund held by a bank in fiduciary capacity is not changed by being placed with other moneys. It was also held that where moneys are so mingled the law will presume that the trustees drew out their own money first, and what remained belonged to the trust, but if it could be shown that the entire fund was withdrawn or actually dissipated so

that none of it remained, the rule would necessarily be different; that if the fund has once been disposed of no charge can be made against the general estate to the exclusion of other creditors, but the fact that the same bills or currency were not retained or that the fund was traced into a larger sum of money in the same bank does not destroy its identity.''

In *In re Northrup,* 152 Fed. 373, it is said: ''It would be extremely and ridiculously technical to assert that where a wrongdoer, so far as he can, rights a wrong committed in converting the money of another, by substituting at a subsequent time other money of his own to make good that converted, the beneficial owner may not claim and hold the substituted money or property as impressed with precisely the same trust as the original fund. . . . It does not lie with the wrongdoer, or his assignee or trustee in bankruptcy who has made the substitution, to say that the substituted thing is neither the trust property itself, nor its proceeds.''

In *Macy v. Roedenbeck,* 227 Fed. 346, the rule is thus stated:

''Where a trustee mingles trust funds and makes payments out of the common fund, there is a sufficient identification of the remainder, not exceeding the smallest amount the fund contained subsequent to the commingling, because the legal presumption is that he regarded the law, and neither paid out nor invested in other securities or property the trust fund, but kept it sacred. . . . The modern and more equitable doctrine permits the recovery of a trust fund from one not an innocent purchaser, and into any shape into which it may have been transmuted, provided he can establish the fact that it is his property, or the proceeds of his property, or that his property has gone into it and remains in a mass from which it cannot be distinguished.''

It will be remembered that on the hearing of the intervening petition it was stipulated at the time the judgment was rendered that there were more than $4,000 of cash assets in the bank.

In view of the facts as disclosed by the record, and of the rules as herein announced, we conclude that the circuit court was right in allowing the claim of the intervenor as a preference, and the decree of the circuit court of Kankakee county is affirmed.

*Judgment affirmed.*