The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, Appellee, v. Rochelle Trust and Savings Bank. Haddassa Cleverstone, Intervening Petitioner, Appellant.

Gen. No. 8,581.

Opinion filed June 15, 1934.

FRED E. GARDNER, for appellant.

DIXON, DEVINE, BRACKEN & DIXON, for appellee; ROBERT L. BRACKEN, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

On January 31, 1931, the Rochelle Trust & Savings Bank of Rochelle, Illinois, suspended business. At that time the bank had $10,962.44 in cash in its vaults, and $25,768.94 due it from its correspondent banks. Of this last amount $20,346.51 was deposited in the Continental Illinois Bank & Trust Company of Chicago. Subsequently a receiver was appointed and a bill to liquidate the bank was filed in the circuit court of Ogle county. Thereafter appellant, Haddassa Cleverstone,

filed therein her intervening petition, alleging that on March 14, 1923, and for a long time prior thereto she had been a customer and depositor in said Rochelle Trust & Savings Bank herein referred to as the bank, and on that day purchased from the bank a note for $3,000, dated March 1, 1923, and due March 1, 1928, secured by a mortgage upon 240 acres of farm land near Rochelle. The petition further alleged that at the time she so purchased the note from the bank she was assured by the assistant cashier thereof that the mortgage which secured the payment thereof was a first mortgage upon said land; that she relied upon such representations and assurances and thereafter received interest thereon to and including March 1, 1928; that on March 1, 1928, the same party who was assistant cashier of the bank in 1923 had become cashier of the bank and he prevailed upon appellant to invest $5,000 more, which she then had on deposit in said bank, to be evidenced by another note and secured by a new first mortgage upon said land; that relying upon the representations of the cashier, she surrendered her $3,000 note dated March 1, 1923, and received in lieu thereof a new note for $3,000 and for the $5,000 which she had on deposit in the bank she received another note for $5,000, both dated March 1, 1928; that in addition to the oral assurances by the cashier that both of these notes were secured by a first mortgage upon the farm, she also received a written instrument signed by the bank and under its seal to the effect that the two notes delivered to her were secured by a first mortgage deed to the bank on the 240-acre farm.

The petitioner further alleged that these notes were not secured by a first mortgage, but that a prior mortgage had been executed to the bank by the owner of the land on March 1, 1920, to secure the payment of $24,621, and that the mortgage executed to secure the notes which petitioner held was a second mortgage

upon that land, and in addition to securing the two notes held by petitioner, aggregating $8,000, the second mortgage secured other notes for $2,500 additional. The petition then alleged that foreclosure proceedings had been instituted to foreclose the first mortgage by the owner thereof, Albert E. Eyster, and averred that there is no equity in said land after paying the amount due on the first lien and that the maker of the notes is insolvent. The prayer of the petition was that an order be entered finding that petitioner has a preferred claim for the sum of $8,000, together with interest thereon from March 1, 1931.

The cause was heard by the chancellor and the evidence sustained the allegations of the petition. Mr. Berschied, the cashier of the bank, testified that at the time he sold appellant these notes he knew they were not secured by a first mortgage, although he executed a written instrument in the name of the bank that they were and delivered it to her at the same time he delivered to her the notes. The evidence further disclosed that on December 1, 1930, the bank, being indebted to the Continental Illinois Bank & Trust Company in the sum of $23,488.77, executed and delivered to the Continental Illinois Bank & Trust Company its note for that sum due 60 days after date; that thereafter and on January 12, 1931, the bank being further indebted to the Continental Illinois Bank & Trust Company for a further sum of $20,000, executed and delivered to it another note for that sum due 60 days after date; that thereafter and on January 19, 1931, the bank being further indebted to the Continental Illinois Bank & Trust Company for the further sum of $14,193.32, it executed and delivered to it another note for that amount due 60 days after date, and as collateral security for these notes, which aggregate $57,682.09, it lodged with the Continental Illinois Bank & Trust Company assets consisting of customers' notes of the

par value of $67,267.78 and bonds of the par value of $71,000. Each of the notes which it executed and delivered to the Continental Illinois Bank & Trust Company authorized that bank to appropriate and apply at any time, any moneys which the bank had on deposit with the Continental Illinois Bank & Trust Company to the payment of the bank's several notes. It further appeared from the evidence that immediately upon the closing of the bank, the Continental Illinois Bank & Trust Company, in accordance with the terms of the notes, applied the deposit of $20,346.51 as a credit upon the notes which it held, and subsequently collected sufficient of the customers' notes which had been placed with it, to discharge the balance remaining due and thereafter returned the remaining customers' notes and bonds to the receiver. The parties stipulated that the books of the bank disclose that there has never been less than $16,384.87 in the bank and owing to it from other banks since March 14, 1923.

The chancellor found that the amount due the petitioner was $8,591.92, allowed that sum to her as a preferred claim and provided that she should share pro rata with other preferred claims, and directed that all of the preferred claims be paid from the sum of $16,-384.87, the court finding that there has never been less than that amount in the bank or owing to it from other banks since March 14, 1923. From this order the intervening petitioner has brought the record to this court for review by appeal, insisting that it was error to limit the payment of her claim out of the sum of $16,384.87, insisting that her claim should have been paid pro rata with the other preferred claims from the general assets of the bank, or if not from the general assets, then the sum of $16,384.87 should have been increased $20,346.51, being the amount in the hands of the Continental Illinois Bank & Trust Company at the time the bank closed. The receiver has assigned cross errors chal-

lenging the correctness of the ruling of the circuit court in allowing the claim as a preference and requesting this court to specifically pass upon the question whether the $20,346.51 in the Continental Illinois Bank & Trust Company is available for the payment of preferred claims.

This court is committed to the doctrine that false representations by a bank or its managing officers to the effect that notes sold by it are secured by a first mortgage, when in fact they are not, but are secured only by a second mortgage and that the security is worthless, create a constructive trust in favor of the purchaser, and that where such a constructive trust is created, it is a preferred claim against the bank, notwithstanding the fact that the trust fund had become so mixed with other funds in the bank as to lose its identity. *People v. American Trust & Savings Bank,* 262 Ill. App. 458. In *Woodhouse v. Crandall,* 197 Ill. 104, it was held that where a trust is established, it is not necessary that the money be identified in a proceeding of this character as the proceeding is not instituted to recover a specific thing, but to obtain a sum of money held in trust, and that it is the identity of the fund and not the identity of the money which needs to be established. It was further held that the character of a fund held by a bank in a fiduciary capacity is not changed by being placed with other moneys, and that it makes no difference if its identity as currency is lost by so mingling. It was also held that where moneys are so mingled the law will presume that the trustee took out its own money first before appropriating that which was impressed with a trust and which it had no right to take and that what remained belonged to the trust. In *Macy v. Roedenbeck,* 227 Fed. 346, cited in *People v. American Trust & Savings Bank, supra,* the court said: "Where a trustee mingles trust funds and makes payments out of the common fund, there is a

sufficient identification of the remainder, not exceeding the smallest amount the fund contained subsequent to the commingling, because the legal presumption is that he regarded the law and neither paid out nor invested in other securities or property the trust fund, but kept it sacred. . . . The modern and more equitable doctrine permits the recovery of a trust fund . . . provided he can establish the fact that it is his property, or the proceeds of his property, or that his property has gone into it and remains in a mass from which it cannot be distinguished.''

What the Supreme Court said in *People ex rel. Nelson v. Peoples State Bank of Maywood,* 354 Ill. 519, is pertinent to the questions presented for decision by this record.

''The insufficiency of the assets to satisfy all the demands made upon the insolvent gives rise to claims for preferences and the necessity for their adjudication. The real controversy in a case of this character is therefore between the claimants who seek priority in the order of payment on the one hand and the great body of creditors, usually represented by the receiver, on the other. All debts, in the absence of priorities prescribed by statute, are of the same rank or level, and a person who seeks a preference over his fellow-claimants in the distribution of an insolvent's assets must show that he occupies some relation to the insolvent's estate which differs from and raises him above the plane of a mere creditor. The law recognizes a claim for a preference actually based on a right of property in specific assets in the possession of an insolvent bank at the time it ceased to do business. In case of the misappropriation of such assets, a court of equity, when its jurisdiction is invoked by an appropriate action, will declare the wrongdoer a constructive trustee of the proceeds of his wrongful act. The constructive trust will attach to successive substitu-

tions so long as they can be identified as the product, either as a whole or in part of the original assets, and the superior rights of a bona fide purchaser have not intervened. A trust, however, necessarily involves a relationship between two persons with respect to certain property, and unless the claimant shows, in the case, for example, of an insolvent bank, that the receiver has possession of the whole or a part of the property or its proceeds, the claimant does not place himself in a relation to the insolvent's estate which differs from that of an ordinary creditor and, as a consequence, no trust can be declared or enforced. 'Tracing Technique in Bank Preference Cases,' Prof. Wayne L. Townsend, 7 University of Cincinnati Law Review, p. 201.

"The true owner of a fund wrongfully withheld by another has a right to have it restored, not as a debt due and owing, but because it is the property of the former. A change or alteration in the nature or character of the fund does not affect the relation existing between the parties. Since the right to reclaim a trust fund is founded on the right of property, and not on the ground of compensation for its loss, the beneficiary must be able to point out the particular property into which the fund has been converted. When he is unable to do so, the trust fails and his claim becomes one for compensation only and stands on the same basis as the claims of general creditors. It is as necessary to trace the proceeds of a check or draft constituting part of a trust fund, as it is to trace the proceeds of any other species of personal property; and a trust fund traced into a bank account, if its identity can be established, and no superior rights of innocent parties have intervened, will be held for the benefit of the *cestui que trust*. The question in every case where it is sought to trace trust property is whether it can be identified in its original or altered form.

"The classic statement of the foregoing rule by the Supreme Court of Pennsylvania in Thompson's Appeal, 22 Pa. St. 16, was adopted by this court in *Union Nat. Bank of Chicago v. Goetz,* 138 Ill. 127, at page 135: 'Whenever a trust fund has been wrongfully converted into another species of property, if its identity can be traced it will be held, in its new form, liable to the rights of the *cestui que trust.* No change of its state and form can divest it of such trust. So long as it can be identified, either as the original property of the *cestui que trust* or as the product of it, equity will follow it, and the right of reclamation attaches to it until detached by the superior equity of a bona fide purchaser for a valuable consideration without notice. The substitute for the original thing follows the nature of the thing itself, so long as it can be ascertained to be such; but the right of pursuing it fails when the means of ascertainment fail.' It follows that a receiver of a bank in which a fund impressed with a trust was deposited cannot be required to repay it in preference to the claims of general creditors, unless the trust fund can be identified, or traced into some other specific fund or property. (Citing cases.)

"Formerly the blending of trust money with the money of the trustee was permitted to defeat the beneficiary's interest and to compel him to stand as a mere unsecured creditor. This rule had its basis in the fact that money was not earmarked and for that reason could not be recovered in specie. Later authorities have declared that, in the case of blended moneys in a bank account reduced by withdrawals from time to time, it will be presumed that the sums withdrawn were from moneys which the trustee had the right to expend in his own business and that the balance remaining includes the trust fund he has no right to use. (*Knatchbull v. Hallett,* 13 L. R. Ch. Div. 696; *Central Nat. Bank v. Connecticut Mutual Life Ins. Co.,* 104 U. S. 54; *Smith*

*v. Mottley,* 150 Fed. 266; *Board of Com'rs of Crawford County v. Strawn,* 157 id. 49.) This presumption, it is obvious, may be rebutted by evidence. It follows from the rule thus declared that, if at any time during the currency of the mingled account, the withdrawals leave a balance less than the trust money, that fund must be regarded as dissipated except as to this balance, and deposits subsequently added to the account from other sources may not be attributed to the trust fund. (*Board of Com'rs of Crawford County v. Strawn,* 157 Fed. 49.) The enforcement of this aspect of the rule prevents unwarranted preferences in the distribution of the assets of insolvent banks and its justice is apparent. General creditors can have no complaint if that is returned to which neither the bank nor the receiver ever had title.''

A court of equity in order to protect one who has suffered from a fraud such as was practiced upon appellant by the unprincipled cashier of this bank raises a trust *ex maleficio* and permits the person defrauded to recover the specific money which went into the assets of the bank so long as that money can be traced. From the respective dates the bank received this $8,000 from appellant it held it in the capacity of a trustee. It was not earmarked but mingled with the other moneys of the bank. Appellant has not traced any part of it in specific property or securities or assets which came into the hands of the receiver. Under the authorities which declare that where trust money is blended with other moneys of the bank it will be presumed that the sums withdrawn were from moneys which the trustee had a right to expend and that the sum remaining includes the trust fund, appellant is entitled to share pro rata with other preferred creditors in the money which actually came into the hands of the receiver, which in this case was $16,384.87. The money to the credit of the bank in the Continental Illinois Bank & Trust Company

never reached the hands of the receiver and there is no evidence that during the period beginning March 14, 1923, and ending with the closing of the bank on January 31, 1931, there has been at all times more than said sum of $16,384.87 cash on hand and due from banks and for that reason the lower court correctly fixed that amount from which all preferred claims should be paid and directed that appellant should share pro rata with other preferred creditors.

The order appealed from is affirmed.

*Order affirmed.*